## A. McLaughlin et al. v. Carter, Ritchie & Co. et al.

### Delivered May 9, 1896.

1. **Practice—Evidence—Interrogatories to Party to Suit not Taken as Confessed.**

A party to a suit failed to answer cross-interrogatories propounded to him as an adverse party, because the notary refused to permit him to take them to his attorney for counsel thereon. Afterwards his deposition was taken in answer to other interrogatories propounded to him as an adverse party, and he also testified fully at the trial. Held, that it was not error to refuse to allow the original cross-interrogatories to be taken as confessed.

2. **Pleading—Trust Fund—Sufficiency of Allegations.**

For allegations in an action to follow a trust fund held sufficient to show the amount of the fund which went into a stock of attached goods, and the amount thereof to which plaintiffs were entitled, see the opinion.

3. **Trust Fund Misappropriated—Priority of Lien of Beneficiaries and Attaching Creditors.**

Where a trustee misappropriated the trust funds and mingled them with other property of his own in the purchase of a stock of goods, his creditors by attaching the goods did not thereby acquire a lien superior to that of the beneficiaries in the trust.

4. **Practice—Judgment by Default Upon Cross-Bill.**

Where defendants filed a cross-bill and no citation was issued to the parties against whom it was directed, and they did not waive the citation on the cross-bill, it was not error to refuse judgment by default upon the cross-bill, and to permit an answer to be filed to the cross-action before the trial was begun.

5. **Same—Challenges to Jury.**

Where the interests of plaintiffs and defendants against whom other parties are seeking relief by cross-bill are adverse to each other, they are each entitled to six peremptory challenges in the formation of the jury.

6. **Trust Deed for the Benefit of Creditors—Acceptance.**

Where the beneficiaries of a mortgage to secure creditors notify the trustee of their acceptance, this is sufficient to fix his responsibility to them, without notice to the mortgagor.

7. **Variance—Description of Note.**

Where in an action to enforce a trust the trust deed or mortgage describes the note scheduled therein as due to J. K. B. and signed by W. & H. as sureties, and the evidence shows that such a note was due to the wife of J. K. B., and that no note was due to the husband, there is no such variance as will render inadmissible evidence to show that the wife assented to the mortgage.

8. **Trust Deed—Acceptance by Surety.**

Where the trust deed itself shows that it was intended to secure debts for which another is surety, the surety can accept for his principal.

9. **Trust Fund—Right of Preference.**

Where a trustee misappropriates trust funds, and is unable to replace them, he may protect the beneficiaries by a mortgage as preferred creditors, if he does not require immunity from criminal prosecution as a consideration therefor.

10. **Same—Preference Does not Render Trust Deed Invalid, When.**

Where a debt is such that it cannot be lawfully preferred in a trust deed over other creditors, its preference will not, unless there is an illegal consideration therefor, or fraudulent intent therein, of which the other creditors have notice, invalidate the trust deed as to them.

**11. Costs—Cross-Action—Discretion of Court.**
Where defendants lose their case against plaintiffs, and against other parties against whom they filed a cross-bill, it is within the discretion of the court to tax against the cross-petitioners the entire costs of the suit.

APPEAL from Lamar. Tried below before Hon. E. B. McCLELLAN.

*Dudley & Moore,* for appellants.—1. Where a party to the suit intentionally and deliberately refused to answer interrogatories propounded to him by the opposing party, under the statute such interrogatories are to be taken as confessed. Sayles' Civ. Stats., art. 2243; Parker v. Chancellor, 73 Texas, 475; Friend v. Miller, 62 Texas, 177; Teas v. McDonald, 13 Texas, 849.

2. It was incumbent on the plaintiffs, to give them any standing in court, that they trace the trust money arising from the Carter, Ritchie & Co. mortgage clearly into the very property (stock of goods) levied upon by appellants, and to do this, they must have alleged and proved the amount of such trust fund which went into the stock of goods levied upon, and the amount of such fund which either belonged to plaintiffs, or for which they claimed a prior lien on the property so levied upon. Black v. Caviness, 2 Texas Civ. App., 118; Mims v. Mitchell, 1 Texas, 443; Carter v. Wallace, 2 Texas, 206; Forbes v. Moore, 32 Texas, 196; Newsom v. Beard, 45 Texas, 156; Mayton v. Railway, 63 Texas, 78; Bank v. Weems, 69 Texas, 488; Englar v. Offatt, 70 Md., 78, s. c., 14 Am. St. Rep., 332; Gunter v. James, 9 Cal., 659; Little v. Chadwick, 151 Mass., 109; Bank v. Geatz, 138 Ill., 127; Wetherell v. Obrien, 140 Ill., 146; Lathrop v. Bampton, 31 Cal., 17; Perry on Trusts, sec. 828.

3. Where the trust estate has been by the trustee so mingled with his own property that it cannot be traced, his attaching creditor who levies his writ of attachment on such property of the trustee without notice of the mingling of the trust estate with such property, secures a valid and prior lien on the property of the trustee. Taylor v. Carryl, 24 Pa. St., 259; Willet v. Stringer, 17 Abb. Pr. (N. Y.), 152; Elevator Co. v. Clark, 53 N. W. Rep., 175; Bank v. Bank, 15 Fed. Rep., 858; Whitcomb v. Jacob, 1 Salk, 160; Trecothick v. Austin, 4 Mason (U. S.), 29; Kipp v. Bank of N. Y., 10 Johns. (N. Y.), 63; Bank of Commerce v. Russell, 2 Dill. (U. S.), 215; Carin v. Gleason, 105 N. Y., 256; Holmes v. Gillman, 138 N. Y., 369; Drake on Attachments (5th ed.), sec. 529.

4. The court erred in refusing to give appellants a judgment by default pro confesso on their cross-bill against the parties defendants thereto and in allowing said parties to file an answer to said cross-bill. Sayles' Civil Statutes, 1282, 1283, Act of March 20, 1893; Laws 23d. Leg., p. 31; Wilson v. Zeigler, 44 Texas, 657. As to the effect of the recital in the order appointing the receiver, that the parties entered their appearance, see Ingle v. Bell, 84 Texas, 463; 3 Willson's C. C., 382; Thompson v. Bishop, 29 Texas, 154.

5. Parties who are not in fact fighting or opposing each other in a suit, although they may appear on opposite sides, are not entitled to separate jury lists, and are not entitled to exercise separate peremptory challenges to the jury, and where it appears that opposite parties to a suit have pooled their interests, they should not be allowed six peremptory challenges each. Kelley-Goodfellow Shoe Co. v. Insurance Co., 10 Texas Civ. App., —; Wolf v. Perryman, 82 Texas, 112; Jones v. Ford, 60 Texas, 130; Railway v. Terrell, 69 Texas, 650.

6. Settle, Williams, and the parties claiming under the chattel mortgage from Settle to Williams, were not adverse parties among themselves, but all were adverse parties to appellants, McLaughlin et al. The answer of Settle to the interrogatories propounded to him by McLaughlin et al., under the statute for taking the depositions of an opposing party, could not be contradicted except by an adverse party. Sayles' Civ. Stats., arts. 2239, 2242; Hughes v. Prewitt, 5 Texas, 264.

7. A mortgage is a contract, and is not completed until accepted by the mortgagee and notice of such acceptance given to the mortgagor, and where there are more than one mortgagee it is only complete and takes effect as to each from his acceptance and notice thereof to the mortgagor, therefore notice of acceptance given to the trustee J. S. Williams, for whose benefit it is claimed the mortgage was given and who had no authority or power other than that expressed in the mortgage, to-wit: to take possession of the property, sell the same and pay over the proceeds to the parties preferred, including the debts for which he was liable, is not notice to the mortgagor, and is not admissible in evidence, to make the mortgage contract complete. Murphy v. Milling Co., 26 S. W. Rep., 853; Cobbey on Chattel Mortgages, sec. 413; Louisiana Sugar Co. v. Harrison, 29 S. W. Rep., 500.

8. The debt described in the mortgage is the debt secured thereby, and the mortgage will not be extended so as to include a debt or a party not described therein, against the rights of intervening creditors, and in no case will parol evidence be admissible to prove who was intended to be secured, or a mistake in the description of the debt, and show the real debt intended to be secured, without pleadings alleging such mistake and setting up the debt intended to be secured by the mortgage. Sayles' Civil Statutes, art. 1195; Mims v. Mitchell, 1 Texas, 443; Carter v. Wallace, 2 Texas, 206; Mayton v. Railway, 63 Texas, 78; Lewis v. Hatton, 86 Texas, 533; Jewett v. Preston, 27 Me., 400; Follett v. Heath, 15 Wis., 601; Storms v. Storms, 3 Bush. (Ky.), 77; Brandall v. Flood, 41 Conn., 68.

9. If Settle misapplied the Carter, Ritchie & Co. trust money and used it in his business in the Blue Front, and invested the same in the stock of goods embraced in the chattel mortgage to Williams, and if Williams and the preferred creditors in said mortgage had notice of this, or were in possession of sufficient facts to have put a reasonably prudent person upon inquiry, which would have led to notice at the time of the execution of the mortgage, or at the time they accepted the

same, then said mortgage was void, and neither Settle nor those claiming in privity with him (to-wit, Williams and the preferred creditors) could take anything under, or derive any benefit from said chattel mortgage. An abuse of a trust can confer no rights upon the trustee or those claiming in privity with him. Kennedy v. Baker, 59 Texas, 163; 2 Story's Eq. Jur., secs. 1258, 1261c, 1261d.

*H. D. McDonald* and *Burdett & Connor*, for appellees.—1. The only peculiarity about the statute relating to the ex parte depositions of parties, is the pro confesso part of it, otherwise, by its very terms, "the testimony shall be received in the same manner and according to the same rules which apply in the case of any other witness." Rev. Stats., art. 2239.

2. Notice of acceptance or assent given to Williams, the trustee, prior to the levy of any attachment, consummated the mortgage contract, and gave the accepting creditor precedence over the attaching creditor. Murphy v. Milling Co., 26 S. W. Rep., 853; Tuttle v. Turner, 28 Texas, 773; Schneider v. McCaulsky, 6 Texas Civ. App., 501; Bauman v. Jaffray, 6 Texas Civ. App., 494; Scurry v. Fromer, 26 S. W. Rep., 461; Willis v. Murphy, 28 S. W. Rep., 362; 1 Am. and Eng. Encyc. Law, 823-4.

3. In this case, where Williams in his cross-bill sues as trustee to recover the fund for the purpose of executing the trust, and his pleading and evidence show a valid chattel mortgage, valid debts and any acceptances at all, the question of variance between one of the debts as described in the mortgage and as it really was, has no place in the case at all. Meyer Bros. Drug Co. v. Rather, 30 S. W. Rep., 812; Jones on Chat. Mortg., secs. 85, 86; Jones on Real Estate Mortg., secs. 71, 352-4; Burrill on Assignments, sec. 146.

4. The trust money which Settle had converted and used in his own business was a debt which he had a right to secure in his mortgage. Mills v. Swearingen, 67 Texas, 272; 15 Am. and Eng. Encyc. Law, notes on pp. 763-4.

FINLEY, ASSOCIATE JUSTICE.—Appellants' statement of the case as made in the brief of their counsel, is sufficiently accurate to serve the purpose of a preliminary statement in the opinion, and will be given.

This suit was brought by Mrs. B. Babcock, A. A. Walker, L. J. Bankhead, Eldridge Carter, the Paris Exchange Bank, and Carter, Ritchie & Co., a firm composed of J. A. Carter, W. J. Ritchie and A. W. Deatherage, against George M. Settle, J. S. Williams, D. S. Hammond, A. McLaughlin, W. E. McMurry and A. G. Hubbard, to set aside and declare void a chattel mortgage executed by Geo. M. Settle to J. S. Williams, as trustee, on December 30, 1893, upon a stock of dry goods in Paris, Texas, known as the "Blue Front." Hammond, McLaughlin, McMurry and Hubbard were made parties because the said Hammond, as sheriff of Lamar County, was in possession of the stock

of goods by virtue of the levy of three writs of attachments on the same, sued out by said McLaughlin, McMurry and Hubbard, respectively, against the said Geo. M. Settle.    The suit was brought by plaintiffs for themselves alone, and not for themselves and all others who might desire to join or participate in its benefits.

The plaintiffs claimed that they were beneficiaries in, and entitled to a part of, a trust fund which went into the hands of Geo. M. Settle as trustee; that said Settle had used about $6000 of said trust fund in his said dry goods business, known as the "Blue Front"; that said Settle had transferred all of said stock of goods by chattel mortgage to said J. S. Williams, in which the said plaintiffs and the other beneficiaries in the said trust fund were preferred for $6000, but that creditors of the said Settle were preferred first in said mortgage to such an amount, that unless the mortgage was set aside, the plaintiffs would get nothing.    They repudiated the chattel mortgage, claimed a lien on the "Blue Front" stock to the extent of the trust fund, prayed that the mortgage be declared void and set aside, and that they be allowed to follow the trust fund which went into the "Blue Front" stock of goods, that a receiver be appointed to sell the goods, and that they be first paid out of the proceeds.    A receiver was appointed at chambers, who sold the stock of goods and paid the money into the registry of the court, amounting to about $20,000.

Defendants McLaughlin, McMurry and Hubbard demurred generally to plaintiffs' petition, because it stated no cause of action against them or either of them, and demurred specially to plaintiffs' petition because it does not allege the respective amounts belonging to plaintiffs out of the trust fund, and does not allege that they or either of them had any notice of the trust, or the mingling of the fund by Settle at the time they acquired a lien on the property of said Settle; answered by general denial, and filed a cross-bill against said Settle, Williams and all the preferred creditors in the chattel mortgage from Settle to Williams, setting up the invalidity of said chattel mortgage; that it was made by Settle for the purpose and with the intent of defrauding his creditors; that he, the said Settle, embezzled the trust fund which was in his hands as trustee, converted the same to his own use, and had the same in his possession or at his command, and then preferred the amount of said trust fund in his chattel mortgage to Williams for the fraudulent purpose of securing an advantage to himself and withdrawing that amount from the reach of his creditors; that Williams knew of such fraudulent purpose and intent at the time of the execution of the chattel mortgage and at the time he accepted it; that none of the creditors preferred accepted said mortgage, and that if any did so accept the said mortgage, they had notice of such fraudulent intent and purpose of Settle at the time they accepted the mortgage; alleged that certain debts were fictitious, and were preferred for larger amounts than were owing by said Settle; set up their attachments and liens thereby secured on the goods; prayed that the said chattel mortgage be declared void, and that the

debts of the defendants McLaughlin, McMurry and Hubbard be first satisfied out of the fund in court in the order of their priority.

The defendant J. S. Williams answered both the plaintiffs' petition and the cross-bill of McLaughlin and others, by general demurrer and general denial, and filed a cross-bill against plaintiffs and against Mc-Laughlin et al., alleging that G. M. Settle, being indebted to divers persons, firms and corporations, on December 30, 1893, executed to him a chattel mortgage on his stock of goods, setting out the terms of the mortgage, referring to the mortgage for the creditors thereby secured and the amount of their respective debts, and that the same was accepted by all the creditors therein named before any attachment was levied; set up the attachments, the appointment of the receiver, and the sale of the goods by him, and prayed that the lien of the creditors named in the mortgage be established, and that the clerk be ordered to pay over the money in court to him.

The creditors claiming under the chattel mortgage to Williams filed answers simply adopting the answer and cross-bill of J. S. Williams. The defendants McLaughlin, McMurry and Hubbard filed a supplemental answer and cross-bill reiterating their demurrer to plaintiffs' amended original petition, demurring to the cross-bill of Williams and denying the allegations therein; denying that all the trust fund alleged by plaintiffs went into the stock of goods upon which they had levied their writs of attachment, and setting out specifically what the said Settle did with the said trust fund; that they had no notice of the mingling of said trust fund by Settle with his stock of goods at the time of their respective levies, and that J. S. Williams and the preferred creditors had such notice at the time of the execution of the chattel mortgage; and prayed that they be first paid out of the fund in court.

The cause was tried before a jury, who returned the following verdict for plaintiffs: "We, the jury, find for plaintiffs in the sum of five thousand seven hundred and fifty-two dollars. George Neville, foreman." Then followed a verdict finding the names and amounts of those having just claims against G. M. Settle, and the order in which they were entitled to priority of payment out of the fund in court, giving fifteen creditors priority over McLaughlin, McMurry and Hubbard,, and giving them priority over ten other creditors. Judgment was rendered in accordance with the verdict, from which this appeal is taken.

The first assignment of error relates to the action of the court in suppressing the cross-interrogatories propounded by McLaughlin, McMurry and Hubbard to G. M. Settle, which said Settle had declined to answer.

It appears from the record that the attorneys of the plaintiffs propounded interrogatories to the defendant G. M. Settle, and sought to take his depositions as a witness, giving notice to opposing counsel as required by chapter 2, title 38, Revised Statutes of Texas. Counsel for defendants Settle and Williams crossed the interrogatories, and the defendants McLaughlin, McMurry and Hubbard also filed cross-interrogatories and a commission was duly issued to take the deposition of said

Settle in answer to the direct and cross-interrogatories. The comm.ssion was placed in the hands of a notary, who summoned said Settle before him and took his answers to the direct interrogatories of plaintiffs and cross-interrogatories propounded by counsel for defendants Williams and Settle, but not in answer to the cross-interrogatories propounded by defendants McLaughlin, McMurry and Hubbard. When he was required by the notary to answer these cross-interrogatories, he went to see his attorneys, and returning asked that he might take the interrogatories to his attorneys and obtain their counsel before answering them. The notary refused to grant the request, and notified the witness that unless he answered he would certify that he had refused to do so. Witness then told the notary that he was willing to answer the questions if he was allowed to take them to his attorneys and consult them, but not otherwise, and asked that such be stated in his ground for refusal to answer. The notary certified the refusal, and gave the reason in substance, as requested. Upon the motion of McLaughlin, McMurry and Hubbard at a term of court previous to the trial, the depositions of the witness given in answer to plaintiffs' interrogatories and the cross-interrogatories of the defendants Williams and Settle were suppressed, on the ground that the witness had failed to answer the cross-interrogatories of McLaughlin, McMurry and Hubbard. After this action, upon motion of the defendants Williams and Settle, the cross-interrogatories propounded by McLaughlin, McMurry and Hubbard were also suppressed. It is this last action, and the refusal of the court to allow the cross-interrogatories to be taken as confessed and read in evidence, that appellants complain. Subsequently the depositions of the witness were taken by appellants in answer to interrogatories propounded to him as an adverse party, and he also appeared in person at the trial and testified fully as a witness in the case. We do not think the court erred in this matter. Bounds v. Little, 75 Texas, 319; Robertson v. Melasky, 84 Texas, 559.

The second, twenty-first, twenty-third and twenty-sixth assignments are grouped and are next presented, and under them several propositions are urged.

It is first urged that plaintiffs' pleadings failed to allege the amount of the trust fund which went into the stock of goods levied upon, and the amount thereof to which plaintiffs were entitled.

It is alleged in plaintiffs' pleadings that Carter, Ritchie & Co. executed a mortgage upon their stock of merchandise to G. M. Settle for the benefit of certain of their creditors, among them the plaintiffs, other than Carter, Ritchie & Co., giving the amount and character of their debts, and that they were preferred creditors in said mortgage. It is alleged that the trustee accepted the trust, disposed of the property by sale, and realized the aggregate sum of $13,000. That the trustee then went into business for himself, buying what is designated as the "Blue Front" stock, worth from $40,000 to $60,000, and that as much or more than $6000 of the trust fund was put into the "Blue Front" stock by

Settle. That the "Blue Fron stock had been replenished from time to time, sales of the goods having been made, but that the integrity of the stock had been preserved and had at all times been much larger in value than the amount of the trust fund which was placed in it. That the trust fund had been so mingled with other property that it could not be separated. It is alleged that Settle had conveyed by mortgage the "Blue Front" stock to J. S. Williams for the benefit of the individual creditors of said Settle, including in such transfer the trust funds therein invested. It is further alleged that there are other parties, named in the pleading, who are beneficiaries in the Carter, Ritchie & Co. deed of trust, who have a joint right with plaintiffs to the said trust funds, that plaintiffs do not know the exact amounts of their debts, and for that reason cannot give the per cent and amount of such trust funds to which each is entitled. The prayer is that plaintiffs' debts be first paid out of the proceeds of the stock of goods, and for general relief. We do not think the objections urged against the pleadings well founded. Cochran v. Sonner, 26 S. W. Rep., 521; Bank v. Weems, 69 Texas, 497-499; 1 Perry on Trusts (3 ed.), sec. 447.

It is further urged that the evidence failed to show that the trust funds went into the "Blue Front" stock levied upon. This contention is not sustained by the record. The testimony of Settle himself is to the effect that about $6000 of the trust funds were by him put into the "Blue Front" business. In going into details, he showed amounts aggregating $248 of the trust funds which were applied to other objects and did not go into said business. The jury deducted this sum, allowing only $5752 of the trust funds as going into the business. He further testified that the stock never fell below $40,000 in value. The testimony is voluminous, and we do not think any good purpose would be subserved by a discussion of it in detail. The evidence justified the verdict, so far as this contention goes.

Appellants also insist that they are attaching creditors without notice of the fact that such trust funds had gone into the stock and had been mingled with other property of Settle, and for that reason their lien is superior to the rights of plaintiffs. This proposition is not believed to be sound Kennedy v. Parker, 59 Texas 150; 2 Perry on Trusts, sec. 828.

The appellants complain in their fifth a gnment at the refusal of the court to allow them a judgment by default upon their cross-bill against the defendants, as therein disclosed. It appears that the judge in chambers appointed a receiver, alone upon the petition of plaintiffs; at that time appellants had filed no pleadings. Appellants' cross-bill was filed subsequently, and no citation issued to the parties against which it was directed, and they did not waive citation upon the cross-bill. Before the trial was begun they were permitted to file their answer to appellants' cross-action. There was no error in this action of the court.

The fourth assignment attacks the ruling of the court in allowing the

plaintiffs and the defendants against whom appellants seek relief, each six separate peremptory challenges of the jury.

The interests of these parties, as disclosed by the pleadings and evidence, were adverse, and the court did not err in so treating them. Rev. Stats., 3084; 82 Texas, 112; 60 Texas, 130; 8 Texas Civ. App., 233-234.

The fifth, sixth, seventh, ninth and sixteenth assignments of error are presented together as in different forms raising one question. Under these assignments it is contended, (1) that the acceptance of the mortgage from Settle to Williams by the beneficiaries therein could not be shown, because Settle in answer to interrogatories propounded to him as an adverse party by appellants under the statute, had testified that none of such beneficiaries notified him that they accepted under the mortgage prior to 8 o'clock, January 1, 1894; appellants' attachments having been levied prior to that time. The evidence complained of, and which is pertinent to this proposition, showed that preferred creditors secured by the mortgage from Settle to Williams accepted the mortgage to and through Williams, the trustee.

This proposition of appellants cannot be sustained. In the first place, the evidence was not in contradiction of the testimony of Settle. Settle testified that the creditors did not notify him of their acceptance. In the second place, if it was contradictory, that fact did not render it inadmissible. The fact that the mortgagor who was a party had testified to a state of facts damaging to the beneficiaries in the mortgage, did not seal the lips of the trustee and beneficiaries of the trust. They could contradict him and show the real facts of the case without the infraction of any rule of law of which we are cognizant.

It is next insisted, that the beneficiaries of the mortgage, in order to make it a binding and effective conveyance, must have notified the mortgagor, Settle, of their acceptance of its benefits, and that notice of such acceptance to the trustee, Williams, would not be legally effective. In support of this proposition the following authorities are cited: Milling Co. v. Eaton, 86 Texas, 401; Murphy v. Milling Co., 26 S. W. Rep., 853; Cobby on Chat. Mortg., sec. 413; Louisiana Co. v. Harrison, 29 S. W. Rep., 500.

The authorities cited announce the proposition that acceptance of the mortgage by the beneficiaries is essential to render the conveyance effective; but they do not decide that the beneficiaries may not manifest their acceptance by notice to the trustee. Indeed, they do not discuss the question as to how the beneficiary may make known his acceptance. It is not determined that such acceptance must be expressed in any particular manner, but that the fact of acceptance must exist to make the conveyance a contract between the parties. As the beneficiary has the privilege to accept or reject, he must exercise his option, and until he does so there is no effective contract. In the case at bar, the mortgagor appointed a trustee to carry into effect the terms of the mortgage, and the beneficiaries notified the trustee of their acceptance of the bene-

fits of the instrument imposing the trust upon him. This notice was given prior to the levy of appellants' writs of attachment. The beneficiaries exercised the privilege of accepting or rejecting which they had, and manifested their purpose by notice to the trustee. When this was done, the mortgagor no longer had the power to recall the trust which the instrument created. His conveyance became irrevocable, and the trustee's responsibility to the beneficiaries became fixed and unavoidable. The trustee was in possession of the property for the very purpose of appropriating it to the satisfaction of the debts of the beneficiaries, and to whom would it have been more appropriate for them to make known their willingness to receive such benefits? The mortgagor by the terms of the instrument had constituted the trustee his agent for the purpose of disposing of the property thereby conveyed, and appropriating its proceeds to the payment of certain debts, and had turned the property over to him for this purpose; and in our opinion the trustee was a proper person to whom the beneficiaries should manifest their acceptance of the mortgage.

Under the same assignments complaint is made of the admission of evidence. J. S. Williams was permitted to testify that he was surety on a note to Mrs. E. F. Bywaters for something over $3100, signed by G. M. Settle as principal, and himself and A. G. Hubbard as sureties, and that this was the note intended to be secured by the Settle mortgage. That on Monday morning after the mortgage was executed and filed, he saw Mrs. Bywaters and told her about the mortgage, and told her if she was not satisfied he would pay the debt in an hour. That she expressed herself as satisfied and assented to the mortgage. Her husband, J. K. Bywaters, was not present, and never expressed to him any acceptance; but two days later sued the parties to the note and levied upon land of the witness. Several months thereafter witness paid the note. This evidence was objected to on three grounds, to-wit,

(1) The evidence contradicted the evidence of defendant Settle as given by deposition. This contention is unsound, as has been already shown.

(2) Notice to Williams, the trustee, of acceptance of the mortgage is not sufficient. This ground of objection was not good, for reasons already stated in the opinion.

(3) The mortgage describes the note as due to J. K. Bywaters for $3300, and there are no allegations of mistake in the pleadings.

Mrs. E. F. Bywaters was shown to be the wife of J. K. Bywaters, the note was given to her and no debt was due J. K. Bywaters, her husband. The note was further described as signed by J. S. Williams and A. G. Hubbard as sureties.

Upon the issue of bona fides in the execution of the mortgage and acceptance by the beneficiaries, the evidence was pertinent; and we do not think there was such a variance between the statement of the debt intended to be secured, as made in the mortgage and that disclosed by the evidence, as would render the evidence inadmissible. Aside from

this view, if the evidence were considered improper, its admission would not be reversible error, for the reason that there are enough preferred debts exclusive of this one, which are not challenged by the evidence and which would take precedence to appellants' debts, to absorb the entire fund before appellants' claims would be reached.

There was evidence admitted going to show that Williams was agent for certain of the creditors, that he was surety of Settle upon debts to other creditors, and that he procured Settle to execute the deed of trust to secure these debts, and that as such agent and surety he consented to the mortgage. The evidence further shows that he promptly wired the persons for whom he was agent, and they ratified his action. The terms of the mortgage show that it was the intention to secure the debts therein set out, and among them were debts upon which Williams was surety, as before stated. The objections urged against this evidence are:

(1) Because there is no pleading that the mortgage was intended to secure Williams as surety. The mortgage itself shows that it was intended to secure debts upon which Williams was surety, he was in equity entitled to the benefit of the mortgage security, and had the right to endeavor to protect himself against loss as surety by procuring this additional security. Sonnentheil v. Texas Co., 30 S. W. Rep., 945; Sanger v. Henderson, 1 Texas Civ. App., 412; Schmick v. Bacon, 77 Texas, 326; 24 Am. and Eng. Encyc. Law, 777, n. 1.

(2) Because Williams could not act for himself as surety, agent of creditors, and agent of Settle all at the same time.

We do not think that the evidence discloses that Williams occupied any inconsistent relations, and the objection is without force.

Plaintiffs were permitted to prove upon the issue of fraud in executing the mortgage, that the debt mentioned in the mortgage as due Mrs. M. V. Meeks, was in fact due Walter H. Dewey, a relative of Mrs. Meeks, and that it was this debt which was intended to be secured. This debt was placed so low down on the list that it could not affect appellants' claims, and the only possible bearing the evidence could have had was upon the issue of fraud in the execution of the mortgage. The court did not err in admitting it upon that issue.

Under the tenth, eleventh, twelfth, thirteenth and fourteenth assignments, appellants, complaining of the general charge and the refusal of special charges asked to be given, propound two propositions; viz:

(1) If at the time Settle executed the chattel mortgage his intention was to secure an advantage to himself by preferring the Carter, Ritchie & Co. trust money which he had converted, and which he had either in whole or in part in his possession or at his command, and if J. S. Williams and the other preferred creditors or any of them had notice of such intent, or were in possession of facts sufficient to have put an ordinarily prudent person upon inquiry which would have led to notice at the time of the execution of said mortgage, or at the time they accepted

the same, then said chattel mortgage was void as to all parties having notice of such intent of Settle.

(2)   If Settle misapplied the Carter, Ritchie & Co. trust money and used it in his business in the "Blue Front" and invested the same in the stock of goods embraced in the chattel mortgage to Williams, and if Williams and the preferred creditors in said mortgage had notice of this, or were in possession of sufficient facts to have put a reasonably prudent person upon inquiry, which would have led to notice at the time of the execution of the mortgage, or at the time they accepted the same, then said mortgage was void, and neither Settle nor those claiming in privity with him (to-wit, Williams and the preferred creditors) could take anything under, or derive any benefit from said chattel mortgage.

The first proposition is fully and fairly expressed in the general charge of the court, and there was no occasion for a special charge embracing the same idea.

The second proposition should not have been charged as the law, because it is not correct.   The fact that Settle misapplied the trust funds of Carter, Ritchie & Co. by putting them into the "Blue Front" business furnishes no legal reason why the debt due by him to the beneficiaries of such fund may not be preferred and secured by mortgage. In Mills v. Swearingen, 67 Texas, 272, opinion by Willie, Chief Justice, it is said: "There is nothing in the statute to show that such a debt cannot be brought into an assignment as well as any other, and that if the assignment provides for a release by accepting creditors, such a debt is not as well released by acceptance as any other.   That it may be entitled to preference out of the assigned funds is another matter," etc.   See also 15 Am. and Eng. Encyc. Law, 762, 763, note; citing Smillie v. Titus, 32 N. J. Eq., 51; Williams v. Engbrecht, 37 Ohio St., 383; Moog v. Strong, 69 Ala., 98.

The proof shows that Settle had used the trust funds in his business; he did not have funds to replace it, and he sought to secure the beneficiaries by the mortgage.   While his conduct in so using the trust funds appears highly improper, censurable and possibly criminal, he was nevertheless liable to the beneficiaries for the money, and no good reason is perceived why he could not secure the same by mortgage, so long as he did not require immunity from criminal prosecution as a consideration.

Even if the debt were such as could not be preferred in a mortgage over other creditors, unless there was an illegal consideration or fraudulent intent of which the other creditors had notice, it would not render the mortgage void as to them.

Appellants also assign as error the action of the court in requiring the jury to schedule the debts secured by the mortgage in the order in which they should be paid, as determined by them under the evidence and the law as charged.

Appellants repudiated the mortgage by attaching the property and

seeking to have the instrument declared void, and if the mortgage is valid, as is determined by the verdict, they have no interest in the distribution of the fund under the mortgage to be affected by the action of the court and jury.    If they were in an attitude to complain, we do not think the assignment presents reversible error.    Blum v. Rogers, 71 Texas, 676.

The last assignment of error presented raises a question of taxing cost.    All the cost was taxed against appellants.    Appellants lost the case as to plaintiffs, and also as to the other parties against whom they filed a cross-bill.

The matter of taxing cost is a matter left largely to the discretion of the District Court, and we do not think the discretion was abused in this instance.    Jones v. Ford, 60 Texas, 132.

The evidence upon the trial justified the jury in finding that Settle put $5752 of the Carter, Ritchie & Co. trust funds into the "Blue Front" business, and that it was never taken out of it; that the stock was kept up by frequent replenishings and never reduced below, or even near the amount of the trust funds which went into it, and the integrity of the stock was preserved to the time of the levy of the appellants' attachments.    This is the only disputed issue of fact between appellants and plaintiffs.

As between appellants and defendants against whom they filed a cross-action, namely, Settle the mortgagor, Williams the trustee, and the beneficiaries in the Settle mortgage, the evidence warranted the jury in finding: (1) That the mortgage was executed in good faith, to secure valid and subsisting debts; (2) That the creditors preferred in the mortgage in whose favor the judgment was rendered accepted the mortgage prior to appellants' attachments.    These were the issues in dispute under the evidence.

We have given careful consideration to every question presented by the record and urged in the able and elaborate brief of counsel for appellants, and have found no error committed upon the trial calling for a reversal of the judgment; it is therefore affirmed.

*Affirmed.*

Writ of error refused.

LIGHTFOOT, Chief Justice, did not sit in this case.