### BUTLER BROS. v. BAKER et al.
### (No. 2417.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 21, 1925. Rehearing Denied March 18, 1925.)

1. **Trusts ☞105 — Purchase of property at foreclosure sale by husband, with separate funds of wife and her wards, held to vest equitable title in wife and wards, and legal title in husband in trust for them.**

Purchase by husband of property at foreclosure of lien in trust deed, and payment therefor with separate funds of his wife and her wards, vested equitable title in wife and her wards, and legal title in husband in trust for them.

2. **Trusts ☞231(1)—Trustee cannot profit individually out of investment made with trust funds.**

A trustee is not permitted to profit individually out of investments made with trust funds.

3. **Trusts ☞372(3)—Evidence held to sustain finding that grantee in trust deed had notice of interest of grantor's wife and her wards.**

Evidence *held* to sustain finding that grantee in trust deed, executed by husband to secure debt owing grantee, had notice of interest of wife and her wards in such land, at time grantee accepted trust deed.

4. **Husband and wife ☞171(7)—Hypothecation of vendor's lien notes by wife, to secure debt of husband, held not to have passed wife's interest in land.**

The hypothecation by wife of vendor's lien notes, to secure debt of her husband, did not pass wife's interest in land, where she did not acknowledge such hypothecation, nor indorse vendor's lien notes, and such notes were never delivered.

5. **Husband and wife ☞159—Signature of wife to notes given by husband to another to secure husband's debt not binding on wife.**

The signature of wife to notes given by her husband to another for husband's debt was not binding on wife, as she could not in this way become surety for obligation of husband.

6. **Husband and wife ☞159—Wife's hypothecation of vendor's lien notes, to secure husband's debt, did not render her personally liable.**

The hypothecation by wife of vendor's lien notes, to secure debt of her husband, even if duly acknowledged by her, did not render her subject to personal judgment, but only subjected her separate property to payment of obligation.

7. **Vendor and purchaser ☞220—One purchasing property, without knowledge of wife's hypothecation of vendor's lien notes thereon, is an innocent purchaser.**

One purchasing property from husband and wife, without knowledge of alleged hypothecation by wife of vendor's lien notes on such land, is innocent purchaser as to such hypothecation, whether it was binding on wife as to her interest in land or not.

Error from District Court, Wheeler County; W. R. Ewing, Judge.

Action by C. F. Baker against Butler Bros., in which J. C. Finley was made a party, and Mrs. Minnie Finley intervened for herself and as guardian of the person and estate of Noah Meads and another. Judgment for plaintiff, interveners, and J. C. Finley, and defendant brings error. Affirmed.

Leake & Henry, of Dallas, for plaintiff in error.

M. Reynolds, of Shamrock, and C. E. Thompson and R. J. Dillard, both of Clarendon, for defendants in error.

JACKSON, J. This suit was instituted in the district court of Wheeler county, Tex., by C. F. Baker, plaintiff below, against Butler Bros., a corporation, to quiet title to the east half of section 95, block 13, and the east half of 440 acres off of the south side of section 6, block A–7, in Wheeler county, Tex., said to contain 540 acres, more or less.

Plaintiff alleged that he purchased said land from J. C. Finley and wife, Mrs. Minnie Finley, for a valuable consideration and in good faith, but that Butler Bros., the defendant below, claimed a lien against the land to secure the payment of $2,216.56, evidenced by a note, and secured by a deed of trust executed by J. C. Finley to Edwin Fox, trustee for Butler Bros., which was properly recorded in Wheeler county, Tex.; that J. C. Finley had no interest in the land, but held title thereto in trust for his wife, Minnie Finley; that, at the time of the execution of said deed of trust, Butler Bros. had notice that the title was held by J. C. Finley in trust for his wife, and, if the defendant did not have such notice, that they were in law charged with notice; that the indebtedness of J. C. Finley to Butler Bros., which the deed of trust was given to secure, was an

old debt incurred and existing prior to the date of the deed of trust and Butler Bros. was not an innocent purchaser in good faith for value; that the deed of trust constituted a cloud upon plaintiff's title and he prayed that it be canceled and the cloud removed.

Butler Bros. answered by general denial, and especially denied that it had any notice, actual or constructive, that Mrs. Finley ever owned the property in her separate right, and denied that it had notice that J. C. Finley was holding the title in trust for her use and benefit, and averred that it was an innocent purchaser for value, having extended the time of the payment of the indebtedness of J. C. Finley to Butler Bros. by reason of said deed of trust, and having extended to J. C. Finley a further line of credit by virtue of said security; that it had no notice of any claim of either Mrs. Minnie Finley, or her wards, Noah Meads and Irene Meads, to said land and prayed for foreclosure of its lien.

Butler Bros. made J. C. Finley a party to the suit, and he answered by general denial, and specially, that in January, 1922, he had been duly adjudged a bankrupt, and that his debt to Butler Bros. had been scheduled as an unsecured claim in the bankruptcy court, and allowed as such against his bankrupt estate, and that Butler Bros. received the sum of $385.85 from the dividends of said estate on its said debt; that in April thereafter he was duly discharged by the order of the court in bankruptcy.

Mrs. Minnie Finley intervened in the suit for herself and as guardian of the person and estate of her wards, Noah Meads and Irene Meads. As such intervener, she pleaded that J. M. Meads, Sr., and Emma Meads were husband and wife, and the father and mother of herself and wards; that in 1910 Emma Meads died intestate, leaving her husband J. M. Meads, Sr., and their nine children surviving, and that her father and mother had, as community property, all of section 95, block 13, and the south 400 acres of section 6, block A-7, in Wheeler county, Tex., aggregating 1,080 acres; that in 1913, by partition in the district court, the east 564 acres were allotted to the nine children, and the west 516 acres were allotted to her father J. M.. Meads, Sr.; that her father died testate in August, 1916, and by the terms of his will left all of his property to her and her two wards, which was substantially the land allotted to him in the partition between him and his children, and in addition, a one-ninth undivided interest in the 564 acres that had been allotted to the children; that the will was duly admitted to probate, and she and her husband, J. C. Finley, were appointed and qualified as independent executors of said estate, and that she also qualified as guardian of the person and estate of said wards; that, at the time of her father's death, said 1,080 acres of land were incumbered with indebtedness which neither the estate nor the children were able to pay, and that it was agreed that J. M. Meads, Jr., should take the title to all of said lands so a loan could be secured thereon to take care of said indebtedness; that, to effectuate such agreement, she and her husband conveyed to J. M. Meads, Jr., all of the lands belonging to her father's estate at the time of his death, and, as a part consideration therefor, he executed and delivered to her and her husband, J. C. Finley, as executors of the estate, four vendor's lien notes, each in the sum of $762, payable to them as executors of said estate; that on the same date she conveyed to J. M. Meads, Jr., her one-ninth interest in the east 564 acres and received one vendor's lien note for $554 as consideration for said one-ninth interest; that the interest of all the other children, including the wards, was conveyed to J. M. Meads, Jr.

That thereafter, in January, 1919, J. M.. Meads, Jr., sold said land to L. J. Carter, who, as a part of the consideration therefor, executed and delivered to J. M. Meads, Jr., eight certain vendor's lien notes, and the said J. M. Meads, Jr., in consideration of the release and surrender of the vendor's lien notes theretofore given by him to the executors for said land, transferred and delivered to Minnie Finley and Claude Finley five of the vendor's lien notes given by the said L. J. Carter to J. M. Meads, Jr., each of which notes so transferred was for the sum of $718; that thereafter L. J. Carter sold said 1,080 acres of land to Frank Wofford and J. L. Isabelle, who, among other considerations, assumed the payment of the five vendor's lien notes assigned to Minnie and J. C. (or Claude) Finley by J. M. Meads, Jr.; that default was made in the payment of said notes, and that she and her husband, to protect the property interests of herself and her wards, declared said notes due, and they were foreclosed properly in district court; that, prior to the bringing of the suit for foreclosure, Frank Wofford and J. L. Isabelle had divided the land conveyed to them by J. M. Meads, Jr., into two tracts, and at the sheriff's sale J. L. Isabelle purchased one of said tracts and J. C. Finley purchased the other, which is the tract in controversy, and that J. C. Finley credited the amount of his bid on the judgment in favor of himself and wife on said vendor's lien notes, and paid no other consideration; that thereafter on November 4, 1921, the intervener and her husband conveyed the property bid in by her husband, J. C. Finley, at the sheriff's sale to the plaintiff C. F. Baker. The intervener pleaded coverture and also substantially the facts set out in the petition of C. F. Baker, plaintiff, and the answer of J. C. Finley, her husband.

The defendant, Butler Bros., by supplemental answer, pleaded general denial to the intervener's petition, specially denied notice, actual or constructive, and pleaded that on March 31, 1921, the intervener and her husband executed their certain collateral note payable to Butler Bros., in the sum of $2,200 and hypothecated with said $2,200 note three vendor's lien notes for the sum of $718 each, secured by a lien upon the property in controversy, which notes were executed by L. J. Carter and payable to J. M. Meads, Jr., and that, in consideration of the execution of the note for $2,216.56 involved in this suit, and the deed of trust securing it, Butler Bros. released and turned back to J. C. Finley and the intervener the note for $2,200, with all right, title, and interest they had in and to said vendor's lien notes of $718 each, and that, if it should be held that Butler Bros. had either actual or constructive notice of the interest belonging to her and her two wards, that intervener did, for a valuable consideration, transfer and assign her interest in said land, by reason of the hypothecation of the said vendor's lien notes of $718 each and such interest as she might have had in said land in trust or otherwise passed out of her by the hypothecation of said vendor's lien notes and was merged into said deed of trust securing the note of Butler Bros.

Butler Bros. also pleaded that, if intervener or the wards ever owned any portion of said land, intervener's title affected only $^{19}\!\!/_{81}$ and the wards' $^{28}\!\!/_{81}$, and that such interest had long since been disposed of; that any interest of the wards was sold to J. M. Meads, Jr., for $1,128 cash, by order of the probate court, and the sale thereof approved by said court.

The case was tried before the court, and judgment rendered in favor of C. F. Baker, plaintiff below, and in favor of J. C. Finley and Mrs. Minnie Finley for herself and her wards, and against Butler Bros., defendants below, and the deed of trust in all things canceled and held for naught.

Butler Bros., plaintiff in error, sued out i.s writ of error to this court, and on October 8, 1924, the case was stricken from the docket because of the insufficiency of the return of the sheriff on the citation to show service upon each of the defendants in error. Plaintiff in error, by proper proceedings, has secured service on all of the defendants in error, and the case is again in this court for review. C. F. Baker, defendant in error, filed a motion herein to have the case again stricken from the docket because of a discrepancy in the initials of C. F. Baker in the caption and in the certificate of the district clerk to the supplemental transcript. This motion is overruled, for the reason that the record sufficiently identifies the parties and the judgment. For convenience, we will hereafter call plaintiff in error appellant, and the defendants in error appellees.

[1, 2] At the request of appellant the trial court filed findings of fact and conclusions of law. Among other facts, the judge found that in the deed from Mrs. Minnie Finley and her husband J. C. Finley, as executors of the estate of J. M. Meads, Sr., to J. M. Meads, Jr., by which the property of Mrs. Finley and her wards was conveyed, there was retained a vendor's lien securing four notes each in the sum of $762, and one note for $554 executed by J. M. Meads, Jr., and payable to Minnie and J. C. Finley as executors; that, in consideration of the release of said notes by the executors, J. M. Meads, Jr., transferred to J. C. and Minnie Finley the five $718 notes received by him from L. J. Carter as a part of the purchase price for the 1,080 acres of land sold to said Carter by the said J. M. Meads, Jr.; that default was made in the payment of four of said $718 notes, and a foreclosure of the lien retained in the deed to secure their payment was had; that an order of sale issued to the sheriff on said judgment, and at the sale thereunder on May 3, 1921, J. C. Finley bid in the land in controversy and paid therefor with the separate funds of his wife, and the trust funds belonging to the wards, Noah and Irene Meads, by crediting the amount paid for said land upon the judgment, and that the sheriff's deed for said land was made to J. C. Finley. These findings are not challenged by any assignment in appellant's brief, though in his eleventh proposition, which is not based upon any assignment in the brief, he urges, as a proposition of law, that there could be no resulting or constructive trust in favor of Mrs. Finley or the wards in the land acquired at the sheriff's sale, because one of the $718 notes had been paid before the suit, and the west half of the 1,080 acres brought $3,000, out of which Mrs. Finley and the wards received the full devise under the will of J. M. Meads, Sr. The evidence, in our opinion, is amply sufficient to establish that the $718 notes were the property of Mrs. Minnie Finley and her wards, and that said notes constituted a blanket lien against the entire 1,080 acres of land. The purchase of the land in controversy, which was a part of the 1,080 acres, by J. C. Finley by crediting the judgment, which was a part of the proceeds of said notes, vesting in Mrs. Finley and her wards the equitable title, and in J. C. Finley the legal title in trust for them. Hix et al. v. Armstrong, 101 Tex. 271, 106 S. W. 317; Hornbeck v. Barker (Tex. Civ. App.) 192 S. W. 276; Hand v. Errington et al. (Tex. Com. App.) 242 S. W. 722; McLaughlin et al. v. Carter et al., 13 Tex. Civ. App. 694, 37 S. W. 666. The trustee is not permitted to profit individually out of investments made with trust funds. Highsaw v. Head et al. (Tex.

Civ. App.) 202 S. W. 155, and authorities cited; Perry on Trust, vol. 1 (6th Ed.) par. 128; Oliver v. Piatt, 3 How. 333, 11 L. Ed. 653; W. E. and J. E. Spencer et al. v. Robert Pettit et al. (Tex. Civ. App.) 268 S. W. 779.

[3] The appellant by its second, third, fourth, sixth, seventh, and ninth assignments urges as error the findings of the trial court that it had notice of the interest of Mrs. Finley and the wards in the land in controversy at the time of accepting the deed of trust upon said land executed by J. C. Finley to secure its debt.

The agreement of the parties as to what is revealed by the county records found in the statement of facts shows conclusively that the 1,080-acre tract of land was the community property of the parents of Mrs. Finley and her wards; that, after the death of their mother, the east 564 acres of said land was by a partition suit in the district court allotted to the nine children, and the west 516 acres were allotted to J. M. Meads, Sr., the father of Mrs. Finley, Noah and Irene Meads; that, by his will, their father bequeathed to them the land allotted to him in the partition suit, and a one-ninth undivided interest which he had acquired in the 564 acres allotted to the nine children; that Mrs. Finley and her husband J. C. Finley qualified as independent executors of the will, and she was also duly appointed guardian of the person and estate of the wards; that, at the death of their father, there existed against his land indebtedness secured by a lien, and that there were no funds on hand with which to discharge said indebtedness, and that it would be to the best interest of all parties to make a sale thereof to J. M. Meads, Jr., and, after the assumption of certain enumerated indebtedness, the deed shows the execution and delivery by J. M. Meads, Jr., to Mrs. Minnie Finley and J. C. (Claude) Finley, executors of the estate of J. M. Meads, Sr., deceased, four certain vendor's lien notes, each in the sum of $762, payable to the executors; that, in the conveyance from Mrs. Minnie Finley and her husband to J. M. Meads, Jr., of the one-ninth undivided interest of Mrs. Finley in the east 564-acre tract, a lien was retained to secure a note payable to Mrs. Finley in the sum of $554; that the two-ninths interest of the wards in the east 564 acres was conveyed to J. C. Finley by guardian's deed for the sum of $1,128 in cash, and that the interests of the other children were also conveyed to J. M. Meads, Jr; that thereafter said 1,080 acres of land was conveyed to L. J. Carter, and in the deed there was retained eight vendor's lien notes, five of which were for $718 each; that on January 23, 1919, J. M. Meads, Jr., by proper assignment, transferred to Claude and Minnie Finley for $3,590 cash said five $718 notes, and that on January 24, 1919, Mrs. Finley and her hus-

band, as executors of the estate of J. M. Meads, Sr., in consideration of the full payment of the four $762 vendor's lien notes by J. M. Meads, Jr., released said notes; that the release and assignment were both filed for record on the same day. It also appears that on May 5, 1921, the date the series of promissory notes were given to Oehler, payable to Butler Bros. for the indebtedness of J. C. Finley, Mrs. Finley was required to sign the promissory notes and also to sign the contract which purported to hypothecate the three $718 vendor's lien notes as security for the debt of J. C. Finley.

J. C. Finley testified that, during his business at Clarendon, he had a great deal of dealings with Butler Bros., bought goods of them on credit, and that, during the year 1920, and every time he went to Dallas to make purchases, he saw the credit manager of Butler Bros., and that he told him the land in Wheeler county belonged to his wife and Noah and Irene Meads; that, at the time he executed the deed of trust, he told Oehler that the land belonged to the heirs, though it was in his name and had been since the sheriff's sale. Mrs. Minnie Finley testified that she had been with her husband to Dallas to buy goods, and while in the place of business of Butler Bros., her husband would talk over his business affairs with the agents and credit men of Butler Bros., and spoke of "our property belonging to the wife and two heirs," Noah and Irene Meads; that Mr. Gevers was the main credit man and he was the man her husband talked to when she was with him in Dallas.

Without giving the testimony in greater detail, we consider it sufficient, and will not disturb the finding of the trial judge, and these assignments are overruled. W. C. Belcher Land Mortgage Co. v. Clark et al. (Tex. Civ. App.) 238 S. W. 685 (writ denied); W. E. & J. E. Spencer et al. v. Robert Pettit et al. (Tex. Civ. App.) 268 S. W. 779.

[4] Appellant by its fifth proposition urges as error the action of the trial court in rendering judgment against it, because Mrs. Finley had the legal right to hypothecate her separate interest in the land evidenced by the three $718 vendor's lien notes to Butler Bros. to secure the debt of her husband, and that, by such hypothecation agreement, her interest in the land passed to Butler Bros. at the sheriff's sale, and was the property of the appellant at the date of the execution of the deed of trust.

The four $718 vendor's lien notes upon which foreclosure was had were placed in the hands of attorneys for collection and suit brought thereon in January, 1921. Judgment foreclosing the lien on the 1,080 acres of land was entered March 26, 1921. The alleged hypothecation was March 31, 1921.

The order to the attorneys who had charge of the foreclosure suit to pay to appellant the proceeds collected from said notes was

not signed by Mrs. Minnie Finley. The hypothecation agreement was not acknowledged by Mrs. Finley, who the record discloses was a married woman. The vendor's lien notes were never indorsed by her, and were never delivered to appellant.

[5] The signature of Mrs. Minnie Finley to the promissory notes given by her husband to appellant for his debt was not binding upon her because she could not in this way become surety for the obligation of her husband. Red River National Bank v. Ferguson, 109 Tex. 287, 206 S. W. 923. The hypothecation agreement was not acknowledged by her, and in the case last cited, while holding that a married woman may mortgage her separate property for the debts of her husband, Judge Phillips, says:

"In all such cases it is her private examination, acknowledgment, and declaration before the officer which constitute the essence and foundation of her obligation."

[6] He also holds in the same case that, even if her mortgage be duly acknowledged, "she incurs, thereby, no personal liability; her property merely stands in the relation of surety for the debt." Therefore, if the hypothecation had been duly acknowledged by Mrs. Finley, it would not entitle the appellant to a personal judgment against her, but could only subject her separate property to the payment of the obligation.

[7] There is no testimony in the record that C. F. Baker, one of the appellees, at the time of the purchase by him of the land in controversy, had any notice, actual or constructive, of the alleged hypothecation agreement; therefore, as to such agreement, whether binding on Mrs. Finley as to her interest or not, he was an innocent purchaser. The notes given by C. F. Baker as part consideration for the land in controversy when purchased by him were by the bankruptcy court at Amarillo declared to be the separate property of Mrs. Finley and her wards. The appellant had due notice of such proceedings and participated therein.

In the view we take of the case, the other assignments of error by appellant become immaterial, and, finding no reversible error in the record, the judgment is affirmed.