## H. O. SCRANTON ET AL. v. W. T. CAMPBELL ET AL.

### Decided March 2, 1907.

**1.—Resulting Trust—Construction of Deed.**

Two brothers, partners in business, purchased from Z. H. (one of two heirs) an undivided half interest in a tract of land; they then purchased, by bond for title, from the administrator of the other heir, J. R. D., the other undivided half interest, paying cash at the date of the bond; after the death of one of the brothers the said administrator executed a deed to the surviving brother reciting that it was in discharge of the obligations of the bond for title; on the same day the surviving brother executed a deed to the heirs of his deceased brother reciting a cash consideration of about one-half the amount originally paid the administrator, but describing the land conveyed as his undivided interest in the Z. H. undivided half, which he and his deceased brother had bought from Z. H. Held, under all the evidence, that, notwithstanding the description in the deed to the heirs it was the intention of the surviving brother to discharge the resulting trust arising by reason of the administrator's deed to him and to make the heirs of his brother only equal owners with himself in the entire tract.

**2.—Same.**

The fact that a bond for title executed by an administrator in his own behalf and as administrator was not binding upon the estate, and the fact that the purchase money was paid at the date of the bond, about two years before the date of the deed executed in pursuance of the bond, will not prevent a trust from resulting in favor of the heirs of a deceased obligee in the bond upon the execution of the deed by the administrator to the surviving obligee.

Appeal from the District Court of Harris County. Tried below before Hon. Chas. E. Ashe.

*J. O. Davis,* for appellants.—The trial court erred in finding that the intention of said Hampton Westcott, in making the deed from himself to the heirs at law of James D. Westcott, was to vest in the heirs of James D. Westcott the title to an undivided one-half of the Robert Dunman survey, leaving the title to the other undivided one-half thereof in said Hampton Westcott, as his own property.

The intent of the parties to the deed, when it can be obtained from the instrument, will prevail. The rule is, that the intention of the grantor is to be ascertained by considering all the provisions of the deed. 2 Devlin on Deeds, par. 836; Walsh v. Hill, 38 Cal., 48; Kimball v. Semple, 25 Cal., 449; Pike v. Munroe, 36 Me., 309; 58 Am. Dec., 751; Means v. Presbyterian Church, 3 Watts & S., 303.

*George H. Breaker, Stewart & Lockett, Greers, Nall & Neblett, Masterson, Atkinson & Masterson* and *Spotts & Matthews,* for appellees.

GILL, CHIEF JUSTICE.—This is an action of trespass to try title brought by H. O. Scranton for himself and as next friend for F. D. and J. P. Scranton, Emma Westcott, a feme sole, and J. P. Westcott for himself and as next friend of James Westcott Collins, a minor. The defendants are W. T. Campbell, George H. Hermann, J. S. Daugherty, E. H. Devore, the Landslide Oil Company, the Planters and Mechanics National Bank, the Guffy Petroleum Company, the Texas Company and J. T. Mason. The plaintiffs claim the land in controversy as heirs of J. D. Westcott. J. P. Westcott also asked that a deed executed by him to J. T. Mason purporting to pass his interest be cancelled on the ground that it had been procured by fraud. Mason having sold his interest to other defendants, disclaimed. The Texas Company disclaimed except as to a pipe line easement across the land. The J. M. Guffy Company disclaimed all except a specific five acres. The other defendants filed general demurrers and answered by general denial, not guilty and limitation. In response to the latter plea J. P. Westcott, J. P. Scranton, F. D. Scranton and James W. Collins pleaded minority and coverture of their mother, Josie Collins.

The cause was tried without a jury and a general judgment was rendered in favor of defendants from which the plaintiffs have appealed.

The one-third league which includes the land in controversy was patented by the State to Robert Dunman. His two children, Zilphia and Joseph R. Dunman inherited the land at his death. Zilphia, who married W. W. Holbrook, conveyed on June 6, 1873, her undivided interest to J. D. and Hampton Westcott. By this deed they became the joint and equal owners of her undivided half interest.

Upon the death of Joseph R. Dunman, which occurred April 9, 1863, an administrator was duly appointed to administer his estate. The appointment was made June 3, 1864. On March 12, 1873, the administrator for himself individually and in his trust capacity executed and delivered to J. D. and Hampton Westcott his bond for title to the Joseph R. Dunman interest of 738 acres in the Robert Dunman one-third league. At the date of this bond for title J. D. and Hampton Westcott, who were brothers, were equal partners in a saw mill and equal owners of the land procured from Zilphia Holbrook. The bond recited a cash consideration in coin paid by the two brothers and obligated the administrator to make title thereafter. The partnership relation and equal ownership above mentioned existed at the date of the death of J. D. Westcott, which occurred September 3, 1873. His wife, Emma Westcott, survived him, as did his two children, J. P. and Josie Westcott.

On November 8, 1875, the administrator of the estate of Joseph R. Dunman, deceased, having under proper orders of the Probate Court sold the estate's interest in the Robert Dunman survey, and being duly authorized, executed a deed to Hampton Westcott the purchaser. On the same day Hampton Westcott for himself and his deceased brother executed to the administrator a written release of the bond for title executed in 1873. On the same day and for a recited consideration of $370 Hampton Westcott executed to the heirs of J. D. Westcott his deed purporting to convey to them his undivided interest in the

Zilphia Holbrook undivided half interest, which he and his deceased brother had bought from her. This deed was placed by him of record, but it appears that at the time none of the heirs of Westcott knew of its execution. It seems to have been a voluntary and ex parte act on the part of Hampton Westcott. At that time Mrs. Emma Westcott, the surviving widow, was a feme sole. Her son, J. P. Westcott, was a minor of tender age, as was Josie Westcott, her daughter. The latter married in 1885 and again in 1888, and the Collins and Scranton plaintiffs claim through her. Mrs. Emma Westcott testified that no consideration was paid for the deed. Hampton Westcott was dead at the date of the trial and the record furnishes no direct explanation of the transaction. It fairly appears, however, 'that Hampton Westcott took the deed from the administrator in discharge of the bond for title which had itself been procured by the joint payment on the part of himself and brother of $738.

It is the contention of appellants that by the force of these facts the heirs of J. D. Westcott had an equitable interest of one-half in the undivided interest thus procured from the administrator. The appellees contend that the deed from Hampton Westcott was in fact made by him in discharge of this trust, the legal title being in him, and that as a consequence of his deed to the heirs the record was made to show the exact status of the two interests. The suit of the plaintiffs is predicated upon this transaction, their theory being that the trust was never discharged but that the deed from Hampton Westcott to the heirs was for a different and distinct consideration, and its legal effect was to place in them the legal title to all the Zilphia Holbrook undivided half and that the equitable title to an undivided half interest in the Joseph R. Dunman undivided one-half, the legal title to which passed to Hampton Westcott by force of the administrator's deed, remained in them.

The defendants hold under duly executed deeds made upon the theory that the trust was discharged leaving Hampton Westcott and the heirs of his brother equal owners in undivided interests of the entire one-third league. The facts further bearing upon these issues may as well be stated in this connection and this question determined first.

The only evidence of the payment on the part of J. D. Westcott of any part of the purchase money for the bond for title was the recital in that instrument and the recitals in the release subsequently executed by Hampton Westcott when he procured the final deed from the administrator. We regard this, however, as ample and shall treat the equitable interest as established.

We can not assent to the contention of appellees that because the bond for title executed by the administrator did not bind the estate and that the payment on the part of J. D. Westcott of part of the consideration, which act formed the basis of the asserted resulting trust, antidated by about two years the deed passing the title, can not be treated as a sufficient basis of such trust. The rule that the consideration must pass at the time the deed is taken in order to give rise to such relation, if applicable, must be applied to the substance

of the transaction, and to uphold the appellees' contention would be to discard the substance for the shadow.

It is also true that the bond for title can not be held a nullity, for by its terms it bound the administrator personally and the rights of the parties being thus fixed it is immaterial by what means he subsequently made good his obligation. The consideration recited in the bond for title was $738, which was equal to about $1 per acre for an undivided half interest in acreage in the survey. The deed from Hampton Westcott to the heirs of J. D. Westcott on the same day he procured the administrator's deed recited a consideration which was equal to about half the purchase price of the land procured in pursuance of the bond for title. No other consideration was paid, and the evidence is insufficient to support the contention of plaintiffs that the deed was in fact made to discharge certain liabilities to his brother growing out of the operation of the saw mill.

Strongly supporting appellees' contention as to the purpose of the Hampton Westcott deed to the heirs is the further fact that for years thereafter the land was treated by the heirs of Westcott as owned in undivided interests, one-half by them and one-half by Hampton Westcott and those claiming under him. He so treated it up to the time of his death without protest from any source, and there was thereafter a friendly partition upon this theory. · The land has been so bought, sold and claimed continuously by all concerned until a short time prior to the institution of this suit. The fact that the partition was lacking in formality or did not bind the minors and married women does not affect its force as evidence of the discharge of the trust. Whether binding or not it shows the understanding and construction of the parties at interest from the date of the Westcott deed, and no act, fact or circumstance inconsistent with this conclusion is shown to have occurred until the bringing of this suit.

This conclusion practically disposes of this appeal. Without reviewing the assignments in detail we hold no error was committed in the admission or exclusion of evidence bearing upon this issue.

Insofar as the claim of J. P. Westcott is concerned he could recover in no event unless his deed to Mason be set aside, which by its terms conveyed his entire interest in the league. In view of the further progress of this litigation we find that the facts do not authorize us to disturb the finding of the trial court upholding that deed.

Under the fourth assignment the appellants complain of the refusal of the trial court to find that the widow and heirs of J. D. Westcott did not know of the deed from Hampton Westcott until called to their attention by their attorneys. Mrs. Emma Westcott testified that she knew nothing of that deed until it was called recently to her attention, and her two children were too young at the date of its execution to have known of it. But the course of the parties in after years with reference to their interest in the land leaves it by no means certain that the knowledge did not come to them at a much earlier date than that claimed by appellants. The assignment can not be sustained.

The third, fifth, and sixth assignments have been disposed of by what has been written.

The seventh and eighth involve matter which we not only regard

as immaterial but the assignments are not presented in such a way as to require our consideration. The same is true of assignments from nine to forty-nine inclusive. We are of opinion, however, that their determination would not affect the result of this appeal. The judgment is affirmed.

*Affirmed.*