HIGHSAW et al. v. HEAD et al.　(No. 1306.)

(Court of Civil Appeals of Texas.　Amarillo.
March 20, 1918.　Rehearing Denied
April 3, 1918.)

1. TRUSTS ☞354—SALE OF LAND—FOLLOWING TRUST FUND.

Where a father, who sold land, the title to which was in him, later purchased other land, paying therefore the cash payment received for the land sold with the intention of paying the deferred payments out of the proceeds of the notes received for the balance of the purchase price of the land sold, which intention was carried out, the land purchased became impressed with the same trust as attached to the land sold.

2. TRUSTS ☞203—SALE OF LAND SUBJECT TO EQUITY—RIGHTS.

Where the father, in whose name legal title was taken to land purchased with funds of sons, sold the land, the sale would include the equity of the sons, and it is presumed that the purchaser took the land free from the equity.

3. TRUSTS ☞354—FOLLOWING TRUST FUNDS.

Where land purchased with money of sons was sold by the father, in whose name the legal title was standing, the sons could rightfully claim the proceeds or follow them into any other property in which they were shown to have been invested.

Appeal from District Court, Hunt County; Wm. Pierson, Judge.

Suit between Willie Highsaw and others and Joe Head and others.　From judgment rendered, the former appeal.　Affirmed.

Sherrill & Starnes and C. W. Tate, all of Greenville, for appellants.　Neyland & Neyland and Sam D. Stinson, all of Greenville, for appellees.

BOYCE, J.　This suit is over the title to certain land in Hunt county.　The parties to the suit are the children of George W. Head, Sr., by two marriages.　The land was acquired during the second marriage, and the issues are as to what part of the land belonged to the community estate of the said George W. Head and his second wife; what part, if any, belonged to the separate estate of the said George W. Head; and whether George W. Head, Jr., and Joe C. Head, children of the first marriage, had any equitable interest in the land by reason of the same being paid for in part with funds belonging to them.　Both George W. Head and his second wife are dead, and the answers to the issues stated are determinative of the interest in the land inherited and held by the parties to the suit.　The land was bought, as stated, by George W. Head, Sr., during the second marriage, the deed being taken in his name, and the consideration therefor was paid out of the proceeds of the sale of 248 acres of land in Houston county, Tex., under circumstances stated later.　Of this 248 acres of land it is agreed that 108 acres were the separate property of George W. Head, Sr.; 40 acres belonged to the community estate of the said George W. Head, Sr., and his second wife, and 100 acres there-of were purchased with funds belonging to George W. Head, Jr., and Joe C. Head, children of the first marriage.　The title to all of the land was in the name of George W. Head, Sr., who sold it altogether for about $900, $50 in cash and vendor's lien notes for the balance.　Prior to the sale the Head family had lived on the Houston county land, and thereafter they moved to Hunt county and Geo. W. Head, Sr., bought the land in controversy, paying therefor $50 in cash and executing notes for the balance of the consideration, a vendor's lien being retained in the deed conveying the land to him, said notes being in such amounts and falling due at such dates as they might be paid with the moneys received in payment of the notes on the Houston county land, it being intended and understood, as the court below found, that the proceeds of the Houston county land should go into and pay for the land in controversy.　The deferred payments on the Hunt county land were paid out of the money collected on the Houston county land notes, but at the time of the date of maturity of the last $150 note on the Hunt county land, remittance had not been received of the Houston county land note falling due at a corresponding time, and on this account the said George W. Head, Sr., borrowed $120, and with this and some money he had on hand paid the said $150 note, and soon thereafter repaid said borrowed money with the money collected on the Houston county land note.　The case was tried without a jury, and the court, after finding the facts substantially as stated above, concluded as a matter of law that an interest in the land, amounting to $108/248$ belonged to the separate estate of the said George W. Head, Sr., an interest of $40/248$ to the community estate of the said George W. Head and his second wife, and an equity of $100/248$ thereof belonged to George W. Head, Jr., and Joe C. Head, and the judgment entered adjusted the rights of the parties accordingly.

[1] The proposition presented under the first assignment is that the execution of the notes by G. W. Head, Sr., on purchase of the Hunt county property was a payment pro tanto by the community, and vested the property in such proportion in the community, and the subsequent payment of these notes out of the Houston county land notes could not date back and affect the status as fixed at the time of the delivery of the deed and the execution of these notes.　The title to the property did not actually pass until the payment of the last vendor's lien note, so that in one sense at least the payments, except the last, were actually made with funds from the sale of the Houston county lands, and some of the cases seem to intimate that this fact might have some effect on the proper decision of this matter.　Carter v. Bolin, 30 S. W. 1084; Pearce v. Dyess, 45 Tex. Civ. App. 406, 101 S. W. 549; Allen v. Allen, 101

Tex. 362, 107 S. W. 528; Scranton v. Campbell, 45 Tex. Civ. App. 388, 101 S. W. 285. But, if it be conceded that the status of the title is to be considered as fixed at the time of the taking of the deed, though the contract then remained executory, yet we think it can be truly said that the property was purchased with the proceeds of the sale of the Houston county land. To hold otherwise would, it seems to us, be to disregard the substance of the transaction for the form. If the Houston county land had been exchanged for the land in controversy, or the Houston county land notes transferred to the vendor of the Hunt county land in payment therefor there could be no doubt as to the result. The execution by George W. Head, Sr., of his own notes, under the findings of the court, which are not challenged, and the borrowing of the $120 with which to make the last payment, with the expectation and intention that these notes were to be paid by collections from the Houston county land notes, were but incidents in the accomplishment of the real purpose of investing the proceeds of the sale of the Houston county land in the purchase of the Hunt county land. The payment of the $50 cash, received from the sale of the Houston county land, with the intention of paying the deferred payments out of the proceeds of the Houston county land notes, we think is sufficient to impress upon this land the same trusts and interests as attached to the Houston county land. Hornbeck v. Barker, 192 S. W. 276 (writ of error denied); Amend v. Jahns, 184 S. W. 729; McClintic v. Midland Grocery Co., 106 Tex. 32, 154 S. W. 1157; Levy v. Mitchell, 52 Tex. Civ. App. 189, 114 S. W. 174; Gilmore v. Brown, 150 S. W. 964; Kingman-Texas Implement Co. v. Herring National Bank, 153 S. W. 397; Perry on Trusts, § 133. The appellant cites, in support of his proposition, Oury v. Saunders, 77 Tex. 278, 13 S. W. 1030; Strnad v. Strnad, 29 Tex. Civ. App. 124, 68 S. W. 69; Lacey v. Clements, 36 Tex. 661; Allen v. Allen, 101 Tex. 362, 107 S. W. 528. In none of these cases, and many others that might be referred to in the same line, does it appear that the deferred obligations were executed and met under any such circumstances as appear in this case. In Oury v. Saunders Case prominence is given in the opinion to the fact that Saunders, at the time of the purchase of the property upon which a trust was sought to be impressed, "could not have contemplated the use of his children's property in paying for it." In Strnad v. Strnad the opinion refers to the fact that "there was no evidence tending to show that the purchase was intended for" the wife. There are many cases that hold that, where property is purchased, partly on time, the initial payment being made out of the wife's separate property, and with the understanding that the deferred payments will also be made out of

her property, a trust will result in the wife's favor, although the title be taken in the husband's name and he execute notes himself for the subsequent payments. These authorities may not be exactly in point because in most of them there was some express agreement in regard to the deferred payments. They do, however, show that the character of the transaction is not to be determined alone from the form which it assumes, but may be determined from the understanding at the time as to the source from which the deferred payments are to be made. This disposes also, we think, of appellant's third assignment, under which it is asserted that, on account of the borrowing of the $120 to pay the last note, as above stated, the community estate would at least have an interest in the property to this extent in addition to that found by the court. The temporary borrowing of this money and payment under the circumstances should not, we think, affect the real nature of the transaction.

[2, 3] By their second assignment, the appellants contend that if any trust attached in favor of Joe C. Head and George W. Head, Jr., to the Houston county land, their right was to proceed to assert it against the purchasers of such land, and they had no interest in the proceeds of the sale of said lands, and consequently none in the Hunt county land. It is not shown that George W. Head, Sr., was the legal guardian of these children. It appears that upon the death of their mother he had in his possession certain personal property which belonged to them, and which he traded for the 100 acres of land referred to, and which he sold while they were still minors. No actual fraud may have been intended against the children, for it appears that at least as to the Houston county land their father informed the children that it was bought with their property and belonged to them, but at least a legal fraud was perpetrated because the father had no legal right to thus dispose of the property of these children. It would appear, therefore, that, strictly speaking, a constructive trust was imposed by equity upon the 100 acres of Houston county land in favor of the children. Pomeroy's Equity Jurisprudence, §§ 1037, 1040, 1051; Perry on Trusts (6th Ed.) § 127, note B, pp. 190, 191. But whether the father was acting with authority or without in trading for the Houston county lands, when he took the title in his own name, equity would protect the rights of the children and grant them the beneficial interest in the land by application of its doctrine of constructive trusts. Under this doctrine the beneficiary may follow the trust property so long as it may be identified and has not been acquired by an innocent purchaser; he may hold the trustee personally liable for its convention or follow it into its various mutations and in whatever form it is ultimately found. The trustee is not to be permitted to profit by his actions, so if he changes the

character of the trust property and the change proves advantageous, the beneficiary may take advantage of it if he so elects, and if the change proves disastrous the trustee may be held liable for the conversion. Oliver v. Piatt, 3 How. 401, 11 L. Ed. 653; Kennedy v. Baker, 59 Tex. 150, and authorities above cited. "As a necessary consequence of this doctrine, whenever property subject to a trust is wrongfully sold and transferred to a bona fide purchaser so that it is freed from the trust, the trust immediately attaches to the price or proceeds in the hands of the vendor, whether such price be a debt yet unpaid, due for the purchase or a different kind of property taken in exchange of even a sum of money paid to the vendor as long as the money can be identified and reached in his hands or under his control." Pomeroy, Equity Jurisprudence, 1051; Schneider v. Sellers, 98 Tex. 380, 84 S. W. 421.

When Geo. W. Head, Sr., in whose name the title to the 100 acres of land in Houston county was taken, sold such land, the sale would include the equity of said children therein, and it is presumed that the purchasers thereof took it freed from their equity. Armstrong v. Hix, 107 Tex. 194, 175 S. W. 430; Saunders v. Isbell, 5 Tex. Civ. App. 513, 24 S. W. 307; Middleton v. Johnston, 110 S. W. 789. These facts distinguish this case from that of Arnold v. Ellis, 20 Tex. Civ. App. 262, 48 S. W. 883, relied on by appellants. In that case certain land had been conveyed to two minors, Beatrice and Bessie McKenzie. Their father executed a bond for title to said property, and invested the money received therefrom in the property involved in the suit. The children, after they attained their majority, ratified the sale of their property under the bond for title, and sought to enforce a trust against the property bought with the money received by their father on the bond. The court held that the attempted sale under the bond for title did not in the slightest degree affect their title to the land, standing in their name, and "they acquired no interest whatever in the consideration received therefor." In other words, the minors' land was not really sold, and they had no interest in the proceeds. The ground of this holding is emphasized by the quotation in the opinion from the case of Hadley v. Stuart, 62 Iowa, 267, 17 N. W. 500. In this case the land of Joe and George Head, Jr., was sold by their father, in whose name the legal title was standing, and they could rightfully claim the proceeds or follow them into any other property in which they were shown to have been invested. In addition to authorities cited see Armstrong v. Hix, supra; Oakes v. West, 64 S. W. 1036; Baber v. Galbraith, 186 S. W. 345.

We find no error pointed out by any of the assignments, and therefore affirm the judgment of the lower court.