**SPENCER et al. v. PETTIT et al.***
(No. 2399.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 31, 1924. Rehearing Denied Feb. 4, 1925.)

1. **Appeal and error** ☜930(3)—**Finding of trial judge supported by evidence conclusive, where issue was not submitted to jury, and no request for submission made.**

Where, in submitting special issues, a controverted issue of fact was not submitted to the jury, and no request was made for submission of same, the finding of the trial judge is conclusive on appeal, if there is evidence to support it.

2. **Husband and wife** ☜274(4)—**Evidence held to sustain chancellor's finding against alleged agreement on sale by husband and heirs of wife.**

In action by heirs of deceased mother for partition of community estate conveyed by father to defendants, contract and evidence that plaintiffs received part of consideration received by their father *held* to support finding ad-

verse to their contention as to agreement that they should receive greater share of proceeds.

3. **Husband and wife** ☜274(4)—**Payment of community debt within short time after death of wife presumed made from community estate.**

Where 35 days after death of wife indebtedness owing on cattle belonging to community was paid, the presumption is conclusive, in the absence of evidence to the contrary, that the indebtedness was paid from community property.

4. **Husband and wife** ☜274(4)—**In action by heirs of deceased mother for share of community estate sold by father, question whether evidence is "reasonably clear and satisfactory" held for jury.**

In a proceeding by minor heirs of their deceased mother for partition of community estate, and to obtain share of proceeds of conveyance by their father, the rule requiring testimony to be reasonably clear and satisfactory *held* to require only such proof as would carry conviction to an unbiased and unprejudiced mind, and whether the evidence was of such character was a jury question.

5. **Husband and wife** ☜274(4)—**In action by minor heirs of deceased mother for partition of community estate and proceeds of sale, evidence held to sustain verdict for plaintiffs.**

In an action by minor heirs of deceased mother for partition of community estate sold by their father, and for their share of the proceeds, evidence *held* sufficient to warrant finding that land and cattle sold to defendants was community estate, or the proceeds of community estate, and that defendants at the time of purchase had notice of plaintiffs' claim.

6. **Trusts** ☜346 — **Where father purchases property with deceased wife's funds, trust results to children.**

Where a father purchases property with the funds of his deceased wife, a trust in the property purchased results to the children of such deceased wife.

7. **Husband and wife** ☜275—**Profits accruing to husband after division of community estate and remarriage belong to second community, and conveyance transfers nothing belonging to first community.**

Profits accruing to husband from the use of his share of community property after death of his wife, division of community estate and his remarriage, accrue to the second community, but on a sale by him and his second wife, the purchaser would take nothing belonging to the first community.

8. **Trusts** ☜231(2)—**Trustee cannot profit by dealing with trust property.**

A trustee can make no profit to himself by dealing with a trust fund, but the cestui que trust can elect to treat property acquired by him as a part of the trust property, and is entitled to all the advantages of the speculation or investment made with the property in the name of the trustee.

---

☜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted March 24, 1925.

**9. Trusts ⚡231(2)—Increased value of community property from father's diligence and skill held not free from claims of minor heirs of wife.**

Where a father on the death of his first wife continued to deal with the lands and cattle of the community estate as before, the fact that additional lands and cattle were acquired partly for cash and partly on vendor's lien notes, *held* not to free increase in value of the community estate because of his labor, credit, or business ability from claims of minor children of the deceased wife, where the property set apart to minors was burdened with its pro rata share of incumbrances created.

**10. Husband and wife ⚡274(1)—Husband's dealing with community estate after death of wife held to create relation of tenancy in common between him and minor heirs of wife.**

Where husband after death of wife continued to use the community estate, dealing with it as his own, buying and selling lands and cattle, the separate character of the interest of minor heirs of the deceased wife was maintained, and they became tenants in common with their father to the extent of their interest.

**11. Husband and wife ⚡273(5)—Debts created in use of community funds held not to authorize sale to pay them.**

Where a father on the death of his wife continued to deal with the community estate, buying and selling lands and cattle, *held* that debts created were not community debts of the first marriage, the existence of which would authorize him to convey the property to pay such debts.

**12. Husband and wife ⚡274(4) — Judgment partitioning land in controversy, but refusing to render personal judgment against purchasers, held not error.**

In an action by minor heirs of their deceased mother for partition of community estate and a share of the proceeds of such property sold by their father, *held* that it was within trial judge's discretion to partition the land, instead of rendering personal judgment against defendant.

Appeal from District Court, Lubbock County; Clark M. Mullican, Judge.

Action by Robert Pettit and other minor heirs, and W. C. Pettit and other adult heirs of Amanda Elizabeth Pettit, against W. E. Spencer and others. From a judgment for the minor plaintiffs, defendants appeal, and from a judgment for defendants against them, the adult plaintiffs appeal. Affirmed.

Stinson, Coombes & Brooks, of Abilene, L. H. McCrea, of Cisco, and Robert H. Bean and Bean & Klett, all of Lubbock, for appellants Spencer Bros.

Vickers & Campbell, of Lubbock, for appellants W. E. and A. Z. Pettit and Ollie and W. H. Lunday.

G. E. Lockhart, of Tahoka, and Vickers & Campbell, of Lubbock, for appellees.

JACKSON, J.　This suit was instituted by the Pettit heirs, Robert, Winnie, Alton, John, Herbert, and Andy Z., and W. C. Pettit, Dora Barnes and husband, H. M. Barnes, and Allie Lundy and husband, W. N. Lundy, as plaintiffs, who are brothers and sisters, and the only surviving heirs of their mother, Amanda Elizabeth Pettit, who died April 1, 1910, leaving J. H. Pettit, the father of the plaintiffs, as her surviving husband. The first six named plaintiffs were minors January 1, 1920. The first four named plaintiffs were minors at the time of filing the amended petition, and instituted and maintained their suit by next friend. For convenience we will hereafter call the plaintiffs who were under age the "minor plaintiffs," and those who had reached their majority the "adult plaintiffs."

The suit was against W. E. Spencer, J. E. Spencer, and J. H. Pettit, and 22 other defendants, who are alleged to have separately purchased their respective tracts from W. E. and J. E. Spencer out of the land in controversy, but as plaintiffs dismissed as to the other 22 defendants, it is unnecessary to give their names.

The plaintiffs allege that their mother, at her death, left an estate consisting of land and personal property, and that no administration was ever had on her estate. Some of the estate of their deceased mother is alleged to be her separate property, and some the community property of her and J. H. Pettit, her surviving husband. The trial court treated all the property as community, and, as no objection is made here to his action, we will consider it as community property, and in stating plaintiffs' allegations, will designate it as community property.

Plaintiffs allege that on April 1, 1910, the date of their mother's death, the property belonging to their deceased mother, Amanda Elizabeth Pettit, and her surviving husband, J. H. Pettit, consisted of land described as sections 8, 10, and 12, block P, in Lubbock county, Tex., containing 1,920 acres, of the value of $30,000, besides some leases on adjoining lands, and that said three named sections were incumbered to secure the payment of $5,000 purchase money; that the personal property belonging to the community estate of their mother at her death, and defendant, J. H. Pettit, consisted of horses, cattle, and other property of the reasonable value of $22,500, and that there was on hand enough farm products and miscellaneous property to pay the community debts; that no administration was ever had on their mother's estate, and no partition was ever had of the community property, or the plaintiffs' part set apart to them; that all of said

---

⚡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

property was used and managed by J. H. Pettit, their father, assisted by themselves, in the operation of the ranch, and that under such operation the ranch grew and prospered and increased in value; the cattle increased and enhanced in value; great portions of them were sold and exchanged for land and other live stock, and the proceeds invested in lands and live stock in the upbuilding of the ranch; so that on the 22d day of September, 1919, said ranch, in addition to the three sections of land hereinbefore named, consisted of additional lands, fully described in plaintiffs' petition, of the reasonable value of $178,200, that the personal property on September 22, 1919, belonging to said community, consisted of live stock, farming implements, crops, and a vendor's lien note, all of the reasonable value of $76,500; that on September 22, 1919, the defendants W. E. Spencer and J. E. Spencer, by a purported purchase, acquired all of said property from the defendant J. H. Pettit by deed and bills of sale.

Plaintiffs allege: That on and prior to January 21, 1923, they owned an undivided half interest in all the land and all the personal property, subject to the payment of the indebtedness against the property. That the indebtedness against the land was approximately $80,000, and the indebtedness against the personal property was $32,500, leaving a net value of the land and personal property of the reasonable value of approximately $200,000, one-half of which belonged to and was the property of the plaintiffs. That since September 22, 1919, the date of the purported sale to W. E. and J. E. Spencer by the defendant J. H. Pettit, all of the personal property had been sold to innocent purchasers for value, and that a great portion of the real estate had been sold to innocent purchasers for value, and vendor's lien notes taken by said W. E. and J. E. Spencer to secure the payment of a large portion of the consideration for the land so sold. That all of said property was converted by the defendants to their own use and benefit, to the damage of plaintiffs. That all of said real estate is the same quality, and of the value of $30 per acre, and is susceptible of partition, and after the amount of the sold land is determined, commissioners of partition should be appointed, and the unsold lands partitioned among the plaintiffs and W. E. and J. E. Spencer, and, if the unsold lands are insufficient to pay their interest, to award to plaintiffs any deficiency out of vendor's lien notes held by the said Spencers against the land that has been sold.

Plaintiffs, by averment, charge the defendants with knowledge of their right and ownership in and to said property at and before the proposed sale to the Spencers by J. H. Pettit. Plaintiffs allege that they are informed and believe that said W. E. and J. E. Spencer promised and obligated themselves to pay the plaintiffs the value of their interest in said properties, and purchased same on such promise, and discounted the consideration agreed to be paid for said property the approximate sum of $50,000 on the pretense that sooner or later the Spencers would have to pay the plaintiffs the value of their interest in said lands and live stock, and that plaintiffs are entitled to recover from said W. E. and J. E. Spencer their interest in said property on their promise to pay therefor, and have a foreclosure of their lien on the unsold lands, and if such unsold lands are not of sufficient value to pay their claim, then the difference should be made up out of vendor's lien notes now owned by the said Spencers for a part of the purchase money on the sold lands.

The adult plaintiffs allege that on September 22, 1919, they signed and acknowledged a warranty deed purporting to convey all of their interest in all of said lands to the defendants W. E. and J. E. Spencer, but allege that they only signed said deed on the condition that they were to be paid for their interest in said property either in cash, or in vendor's lien notes on which they could realize the cash, of all of which the defendants well knew; that they never authorized delivery of said deed unless they were paid such valuable consideration for their interest in all of said lands, and would not have signed said deed, except for the assurance on the part of the defendants, their agents, and representatives, that they would be paid for their interest in said property; that said deed was immediately recorded, and is wholly without consideration, illegal and void as to the adult plaintiffs, and was obtained from them by false and fraudulent representations; that said plaintiffs have never received any consideration for the execution of said deed, and the same should be canceled and held for naught; that in the district court of Lubbock county, Tex., at the December term, a purported suit, which was apparently a partition suit between the minor plaintiffs and the said W. E. and J. E. Spencer was had, but which involved only sections 8, 10, and 12 above mentioned, and in which an undivided one-third interest in said three sections were allotted to the minor plaintiffs, and the other two-thirds interest was allotted to the said Spencers; that plaintiffs had nothing to do with said suit; never authorized it, but that it was manipulated by the said Spencers and their codefendant, J. H. Pettit, for the purpose of estopping the plaintiffs from recovering any interest in the remainder of said lands, and that said partition suit should be ignored as not binding on the plaintiffs, but if said partition suit should be recognized, then it should be limited only to the three sections of land covered by said suit, and the value of plaintiffs' interest recovered in said partition suit should be deducted from their total interest as herein

claimed; that W. E. and J. E. Spencer knew of the right, title, and interest of the plaintiffs, and knew that J. H. Pettit only held the apparent legal title in trust for plaintiffs.

Plaintiffs pray for a recovery of their undivided one-half interest in and to all of said real and personal property; that commissioners be appointed to make partition thereof, and in the alternative, for judgment for the conversion thereof, with a lien against the unsold lands and the vendor's lien notes held against the sold land; also for recovery on the promise of W. E. and J. E. Spencer to pay plaintiffs for their interest in said property with lien as above; that the deed purporting to convey the interest of the adult plaintiffs be canceled, and that the partition suit be held for naught as to the minor plaintiffs, or limited to the three sections involved in said suit.

W. E. Spencer and J. E. Spencer, answering only for themselves, plead general and special demurrers, general and special denial, ratification, waiver, release, limitation, purchase for value in good faith without notice, and res adjudicata, in that the rights of the minor plaintiffs have been fully adjudicated in the partition suit had between them and said Spencers. The answers of the defendants, who were dismissed from the case, will be omitted. The answer of the defendant J. H. Pettit, the father of plaintiffs, admitted substantially the cause of action as alleged by plaintiffs, and asks for judgment over against the Spencers for any sum that should be adjudged against him.

The adult plaintiffs, by trial amendment, alleged that the deed which they executed on September 22, 1919, had been materially altered after its execution; that it originally provided for the payment of $35,000 cash to the signers before its delivery, and, without their knowledge or consent, was changed so that the payment of said $35,000 was waived, and pray for the cancellation of such deed because of such material alteration, and for judgment as in the amended petition.

On the trial only two special issues were submitted to the jury:

"First. Was the property that was sold by J. H. Pettit on July 2, 1919, and described in the contract of said date between W. E. and J. E. Spencer and J. H. Pettit and others, acquired by the use and investment of the proceeds of the property, real or personal, owned and held by J. H. Pettit and his deceased wife, A. E. Pettit, or either of them at the time of her death, or from the increase of said property?

"Second. Did the defendants W. E. and J. E. Spencer, or either of them, have notice of any claim of plaintiffs to the property in controversy, other than sections 8, 10, and 12, at the time of the execution and delivery of the deed?"

To both of these issues the jury returned an answer in the affirmative. The court

found that the defendants W. E. and J. E. Spencer should be protected in their improvements to the extent that such improvements increased the value of the lands involved in the suit, and that the equities of the parties are better adjusted by partitioning the lands, and rendered judgment that the minor plaintiffs recover in value, out of the residue or unsold lands still in the name of W. E. and J. E. Spencer, the sum of $50,326.55; that the unsold lands amounted to 2,771 acres worth $30 per acre without improvements, and $39.68 per acre with improvements; appointed commissioners, and directed them to partition said unsold land so as to give the minor plaintiffs $50,326.55 in value out of said unsold lands, rated at $39.68 per acre, but subject to an indebtedness of $17.60 per acre.

The trial court rendered a judgment in favor of the defendants against the adult plaintiffs. The defendants W. E. and J. E. Spencer have appealed from the judgment against them, in favor of the minor plaintiffs, and the adult plaintiffs have appealed from the judgment against them in favor of defendants. We will dispose first of the appeal of the adult plaintiffs. They assign as error the action of the trial court in denying them a recovery, because the pleadings and evidence show that they were guaranteed their proportionate part of the $35,000 that W. E. and J. E. Spencer guaranteed would be secured by the Spencers from the proceeds of the sale of certain properties consisting of oil leases and royalties given in exchange as a part of the consideration for the properties sold to the Spencers, and that there is no evidence showing that the adult plaintiffs ever released or waived such agreement or payment, and that such payment was not made as agreed.

[1, 2] The record discloses that no issue covering this contention of the adult plaintiffs was submitted to the jury by the trial court, and no request made for the submission of such issue. The contention of the adult plaintiffs was a controverted issue of fact. They signed the deed which they allege had undergone material alterations, which, among other provisions, recites:

"For and in consideration of the sum of $10 and other good and sufficient consideration in the way of exchange of property acknowledged to have been delivered and accepted."

They signed the original contract dated July 2, 1919, which provides that the assignments of the leases and royalties exchanged by the Spencers to J. H. Pettit as part of the consideration for the property acquired by the Spencers, should be made to the defendant J. H. Pettit, who thereafter received such assignments and transferred the title to some of such royalties to the adult plaintiffs, and which they accepted. This discloses that there is evidence upon which the finding of

the trial judge on this issue may be sustained, and his finding, if there is evidence to sustain it, is conclusive on this court. Moore v. Pierson, 100 Tex. 113, 94 S. W. 1132; Stevens et al. v. Cobern· et al., 109 Tex. 574, 213 S. W. 925; Hughes et al. v. Hughes et al. (Tex. Com. App.) 221 S. W. 970.

The assignment urged by the adult plaintiffs is therefore overruled, and the judgment of the lower court against them is affirmed.

W. E. and J. E. Spencer, hereinafter called appellants, under their first and second propositions, present as error the action of the trial court in rendering judgment for the minor plaintiffs on the affirmative finding of the jury to special issue No. 1, that the property sold by J. H. Pettit to appellants was acquired by the use and investment of the proceeds and increase of the property belonging to J. H. Pettit and his deceased wife at the time of her death, for the reason that there is no evidence that all of said property was so acquired, and no evidence identifying any of said property, increase, or proceeds that went into the property in controversy as the property of the plaintiffs.

[3] It is admitted that J. H. Pettit and Amanda Elizabeth Pettit, on April 1, 1910, the date of the death of the wife, owned 1,-920 acres of land, incumbered with a lien to secure the payment of $5,000; approximately 600 head of cattle, incumbered by a mortgage to secure the payment of $7,500. The indebtedness against the real estate was extended from time to time, and payment thereof assumed by the appellants in the transaction whereby they acquired the property. The cattle debt of $7,500 was paid May 5, 1910; 35 days after the death of Amanda Elizabeth Pettit. In the absence of any evidence tending to show that the cattle indebtedness was paid from some other source, the presumption is conclusive that it was discharged out of said community estate.

J. H. Pettit was married to his second wife December 24, 1911. Between the date of the death of his first wife and his marriage to his second wife, the mortgage records of Lubbock county show that he borrowed several sums of money, and gave as security mortgages on cattle, in the same brand as those on hand at the date of the first wife's death, which were discharged from time to time. The mortgage records further disclose that, after his marriage to his second wife, he continued to give mortgages to various parties for various sums of money upon cattle and other live stock, which were also released from time to time. The record of deeds reveals the fact that, after J. H. Pettit had married his second wife, he acquired the 5,960.4 acres of land in controversy, and that in the year 1919, at the date of the sale to the appellants, the equity in these lands and live stock amounted, according to the findings of the court, which is not challenged, to the sum of more than $150,000.

It is admitted that, at the date of the death of Amanda Elizabeth Pettit, she and her husband had nine children, six of whom constitute the minor plaintiffs in this case; that no administration was ever had on the estate of Amanda Elizabeth Pettit, and no partition or division of the community estate of the first marriage was had between J. H. Pettit and his children, up to the time of the sale of the property to appellants. It is in evidence that J. H. Pettit was in the ranch business at the time of the death of his first wife, and that he had no property at that time other than his interest in the community estate of the first marriage; that he continued to operate the ranch after his first wife's death just as he had prior thereto; he mortgaged the cattle, paid the mortgages, bought and sold cattle, and continued to operate the ranch in the same way until it was sold to appellants, and the cattle were the only source of income he had; that he never acquired any property after the death of his first wife in any manner, except from the proceeds of sales from the ranch and the cattle; that his children lived with him during all these years; that he sold the increase of the cattle on hand, sold cattle, purchased other cattle, reinvested the proceeds, and thereby acquired the cattle and other live stock, and also the 5,960.4 acres of land from his ranch business; paid vendor's lien notes against the land as they came due out of the proceeds of the cattle. The ranch was unimpaired, and its integrity maintained throughout the years from the death of Amanda E. Pettit until disposed of to appellants. We consider it unnecessary to make a more extended statement of the evidence. ,

[4, 5] Appellants rely on the rule which requires the testimony to be "reasonably clear and satisfactory," asserting that, if this rule is applied, the evidence is not sufficient to sustain the finding of the jury. This rule could only require such proof as would carry conviction to an unbiased and unprejudiced mind, and whether or not the evidence is "reasonably clear and satisfactory," is a question for the jury; but if the highest test of sufficiency and certainty is applied, we are of the opinion that the verdict of the jury is sustained by the evidence. Pearce et al. v. Dyess et al., 45 Tex. Civ. App. 406, 101 S. W. 549 (writ denied); Hand et al. v. Errington et al. (Tex. Civ. App.) 233 S. W. 567; affirmed by the Supreme Court, 242 S. W. 722; also affirmed on second motion for rehearing, 248 S. W. 25; McLaughlin v. Carter et al., 13 Tex. Civ. App. 694, 37 S. W. 666 (writ denied); Cochran v. Sonnen et al. (Tex. Civ. App.) 26 S. W. 521; Schmidt et al. v. Huppmann et al., 73 Tex. 112, 11 S. W. 175; Highsaw v. Head (Tex. Civ. App.) 202 S. W. 155.

Appellants' fifth and sixth propositions urge as error the affirmative answer of the jury to special issue No. 2, and the action

of the trial court thereon, because there is no evidence that the appellants, or either of them, had notice of any claim of the plaintiffs to any of the property, other than sections 8, 10, and 12, and no notice of any claim of the appellants to or upon any of the property in controversy.

The defendant J. H. Pettit testified that he informed the appellants during the negotiation which resulted in the consummation of the sale to them of the property in controversy, that his first wife was dead; gave them the names of plaintiffs who were her children; that he was in the ranch business when she died; that he continued to carry on that business; had never taken out any administration papers; that there had been no division of the property; that he acquired the additional lands after the death of his first wife; told them of the sections he owned at the time of her death, and of the cattle that he owned, and that he bought the lands in controversy from the proceeds of the ranch business.

W. E. Spencer, one of the appellants, testified that at the time of making the contract he knew that the first wife died in 1910, and knew that J. H. Pettit was engaged in the ranch business, and that his whole business and occupation was ranching, and that he knew he had made what money, and acquired what property he had, in the course of the conduct of his ranch business. The attorney who examined the abstract of title to the real estate sold to appellants, for them, testified that he learned from J. H. Pettit that he married again soon after his first wife's death; that from the information he secured, he required an affidavit executed by J. H. Pettit showing that the plaintiffs had no interest in the property in controversy.

The record discloses that the adult plaintiffs executed the contract dated July 2, 1919, in which the additional property is described; that the deed dated September 22, 1919, by which the lands in controversy were conveyed to appellants, was signed by the adult plaintiffs. Without elaborating the facts in the record further, we consider the evidence sufficient to support the finding of the jury that the appellants had notice. Alexander et al. v. Harris (Tex. Civ. App.) 254 S. W. 146.

Appellants, in their third proposition, challenge the sufficiency of the evidence to support the finding of the jury on special issue No. 1, that all the property in controversy was acquired by the increase and investment of the proceeds of the property of the first marriage, because the great preponderance of the testimony shows that such property was acquired in a large measure by the labor, credit, and business operations of J. H. Pettit subsequent to the death of his first wife. In the fourth proposition appellants assign as error the action of the trial court in re- fusing to submit to the jury the special issue requested by them, asking the jury to find whether the property in controversy, or any part thereof, was acquired by the labors, credit, or business ability of J. H. Pettit and his second wife. These two propositions are so closely related they will be considered together.

[6] The statement heretofore made from the record reveals the facts sufficiently for the disposition of these assignments. If a person occupying a fiduciary capacity purchases property with the fiduciary funds, a trust in the property arises, or is created, in behalf of the cestui que trust, the party entitled to the beneficial interest in the funds, and if a father purchases property with the funds of his deceased wife, a trust results to the children of such deceased wife. In addition to the authorities above cited, we note Perry on Trusts (6th Ed.) vol. 1, par. 127, p. 190; Eastham v. Roundtree, 56 Tex. 110; Pearce v. Dyess, 45 Tex. Civ. App. 406, 101 S. W. 550; Burns v. Ross, 71 Tex. 516, 9 S. W. 468; Caldwell v. Bryan et al., 20 Tex. Civ. App. 168, 49 S. W. 240.

On the death of Amanda Elizabeth Pettit, the mother of these minor plaintiffs, J. H. Pettit continued to manage and control the entire ranch property, including the sale of the live stock and its increase, borrowing money and securing its payment by the property, repaying the borrowed money from sales, reinvesting the proceeds from the ranching business in other live stock and additional lands, speculating with the trust funds as well as his own, with a view to making an income and a profit, all of which continued until the sale to the appellants.

[7] If the community estate of the first marriage had been partitioned, and the one-half undivided interest therein belonging to the children of Amanda Elizabeth Pettit set apart to them, and J. H. Pettit had taken his one-half thereof and continued ranching with his separate property, and remarried as he did, the community estate of the second marriage, at the date of the sale to appellants, would have been the value of the property thus accumulated, less the separate estate of J. H. Pettit at the date of the second marriage, as the profits made would have gone to the community of the second marriage. Schmidt et al. v. Huppmann, 73 Tex. 112, 11 S. W. 175; Holloway v. Shuttles et al., 21 Tex. Civ. App. 188, 51 S. W. 293; Rauch v. Rauch (Tex. Civ. App.) 237 S. W. 334.

[8] Under a partition of the community estate of J. H. Pettit and his first wife, as above suggested, the appellants would have obtained, by the purchase from J. H. Pettit and his second wife, all the separate estate of J. H. Pettit, and all the community property belonging to him and his second wife, but no more. Appellants insist, however, that by the purchase from J. H. Pettit and his second

wife, they acquired an additional interest in the property, because of the labor, credit or business ability of J. H. Pettit in handling the trust funds belonging to the minor plaintiffs. "The trustee can make no profit to himself by dealing with the trust fund, and if he makes a purchase with it, the cestui que trust can elect to treat the property as a part of the trust property, and he is entitled to all the advantages of the speculation or investment thus made with the property in the name of the trustee." Perry on Trusts (6th Ed.) vol. 1, par. 128.

In the case of Highsaw et al. v. Head et al., 202 S. W. 155, Judge Boyce, speaking for this court said:

"But whether the father was acting with authority or without in trading for the Houston county lands, when he took the title in his own name, equity would protect the rights of the children and grant them the beneficial interest in the land by application of its doctrine of constructive trusts. Under this doctrine the beneficiary may follow the trust property so long as it may be identified and has not been acquired by an innocent purchaser; he may hold the trustee personally liable for its convention or follow it into its various mutations and in whatever form it is ultimately found. The trustee is not to be permitted to profit by his actions, so if he changes the character of the trust property and the change proves advantageous, the beneficiary may take advantage of it if he so elects, and if the change proves disastrous the trustee may be held liable for the conversion. Oliver v. Piatt, 3 How. 401, 11 L. Ed. 653; Kennedy v. Baker, 59 Tex. 150."

In Oliver v. Piatt, 3 How. 401, 11 L. Ed. 653, Mr. Justice Story, speaking for the Supreme Court of the United States, says:

"The rule in equity is, that all the gain made by the trustee, by a wrongful appropriation of the trust fund, shall go to the cestui que trust, and all the losses shall be borne by the trustee himself. The option, in such case, to take the new or the original fund is, therefore (as has been already suggested), exclusively given to the cestui que trust, and is given to him for the wisest purposes and upon the soundest public policy."

The Supreme Court of Pennsylvania, speaking through Justice Potter, in Re Locher's Estate, 219 Pa. 46, 67 A. 954, quotes, with approval, this language:

"It is a well-settled rule that where a trustee speculates with the trust funds, he may be held to profit or interest, at the option of the cestui que trust—profits, if the investment has been successful, and interest if it has been disastrous. In no event will the trustee be allowed to make a profit out of the trust fund. The law holds out no inducements to trustees to so misapply the estate. He may lose, but he cannot make by so doing."

To the same effect is the holding of the Supreme Court of Missouri in the case of Landis v. Saxton, 89 Mo. 375, 1 S. W. 359, and in Bent v. Priest, 86 Mo. 475, and the Illinois Court in Weaver v. Fisher, 110 Ill. 146.

[9] Does the fact that the property in controversy was purchased partly for cash and partly on credit, J. H. Pettit signing vendor's lien notes for the deferred payments, contravene the above principle? Under the facts, in this case we think not, for it is manifest from the judgment of the trial court that the property set apart to the minor plaintiffs is burdened, not only with its pro rata of the deferred payments placed against it by J. H. Pettit, the trustee, but also the additional amount for which the property has been since incumbered by the appellants. This should satisfy the principles of law and of equity.

[10, 11] If, however, we should be in error in so holding, in order to determine whether the interests of the minor plaintiffs in the property in controversy is reduced on account of the notes executed by J. H. Pettit for the deferred payments on the land, it is necessary to fix the status of the property "by the character of the right by which the title thereto had its inception." "In various cases in which the first payment for land deeded to the wife has been made with her separate funds, and notes for deferred payments have been executed by the husband, with the understanding between them that they were to be paid out of the wife's separate estate, the land has been held to be her separate property, * * * the controlling facts being the intent of the parties, and the investment of the wife's separate funds." McClintic v. Midland Grocery & D. G. Co., 106 Tex. 32, 154 S. W. 1157, and the cases therein cited; Ralls v. Ralls (Tex. Civ. App.) 256 S. W. 688, and the cases therein cited.

J. H. Pettit, the trustee, paid out of the trust funds its pro rata of the cash consideration, and also when payments were made on the deferred payments he paid out of the trust funds its pro rata on such deferred payments. True there was no agreement shown between J. H. Pettit and the minor plaintiffs, that the notes evidencing the deferred payments should be paid by the trust fund proportionally, but the children, being minors, could not make such agreement, and the intention must be sought from the acts, transactions, and conduct of the business by J. H. Pettit, the trustee, and the record warrants the conclusion that his intentions were to continue the payment of notes given for property out of the trust funds and other funds jointly, as had been his practice since the death of his first wife, so the separate character of the interest of the minor plaintiffs was maintained.

If the conclusions hereinbefore expressed are correct, the debts assumed by appellants against the property were not the community debts of the first marriage, the existence of which would authorize J. H. Pettit, as sur-

viving spouse of the first marriage, to convey the property in controversy to pay such debts, but the children became tenants in common with their father J. H. Pettit. Freeman et al. v. Pierce et al. (Tex. Civ. App.) 250 S. W. 778, and cases cited. Appellants' seventh assignment of error is therefore overruled.

The minor plaintiffs, by cross-assignment, attack the action of the trial court in refusing to render a personal judgment against the defendants for the value of their interest in the property, and foreclosing a lien against the unsold lands, and the vendor's lien notes held by the appellants against the sold land.

[12] The trial court found that the equities of the parties are better adjusted in partitioning the lands in controversy, than in rendering a personal judgment in the case, and, as this was a matter within his discretion, and the record in our opinion not showing any abuse of his discretion, the cross-assignment of the minor plaintiffs is overruled.

Finding no reversible error in the record, the judgment is in all things affirmed.