## HAMMON et al. v. UNITED ROYALTIES CORPORATION.

### No. 12260.

Court of Civil Appeals of Texas. Fort Worth.
Jan. 25, 1930.

Rehearing Denied Feb. 22, 1930.

Harris & Martin, of Wichita Falls, for appellants.

Kilgore, Rogers & Thornton, of Wichita Falls, for appellee.

BUCK, J.

The United Royalties Corporation sued W. H. Hammon and M. M. Garrett to fix a resulting trust on a certain leasehold interest on 20 acres out of what is known as the McCarty tract. The plaintiff alleged that it had an agreement, through its duly qualified officers, with the defendant Hammon to purchase the tract from S. H. McCarty, Jr., and his mother, Mrs. Annie V. McCarty, and the heirs of the estate of S. H. McCarty, Sr., and that the plaintiff agreed with Hammon that, if he would purchase the lease, it would pay him one-half of the cost thereof and one-half of the cost of drilling. That it was definitely agreed between J. D. Combs and C. A. Rogers, officers and agents of the plaintiff, and Hammon, the defendant, that the leasehold interest should be purchased and a well or wells drilled thereon as a common enterprise between the plaintiff and the defendants. That thereafter, on or about June 29, 1928, said defendant obtained from the McCartys the leasehold interest in the 20-acre tract, which was filed for record July 5, 1928, but when plaintiff, having learned of said purchase, called upon the defendant for a statement of the monies due by it for the one-half interest in the leasehold, and offered to pay defendant its pro rata part thereof, the defendant denied such an agreement, and insisted that he and Garrett had purchased the leasehold interest on their own account, and denied that the plaintiff had any interest therein. It was further alleged that the plaintiff relied on said agreement alleged to have been had with Hammon, and therefore refused to negotiate for the acquisition of said lease from one Logan, who came to see the plaintiff and its officers, and offered to negotiate with them for the acquisition of the lease, but that the plaintiff informed said Logan that they had already authorized the purchase of the lease through Hammon.

The defendant denied any such agreement, and specially excepted to plaintiff's petition, in that it did not allege that plaintiff changed its position or was deprived of any rights or suffered any loss by reason of defendants acquiring said lease.

The trial court, on, to wit, January 21, 1929, overruled defendants' exception, and the cause came for trial. The cause was submitted to a jury upon special issues and the jury found:

Special issue No. 1. That the defendant did agree with the plaintiffs in substance and effect that he would acquire the lease in question for the joint account and joint interest of the plaintiffs and defendant.

Special issue No. 2. That J. B. Combs did not inform the defendant before the lease was purchased by Hammon that the United Royalties Corporation was financially unable to take any interest in said lease.

Special issue No. 3. That the plaintiff Royalties Company was to have one-half interest of said lease.

The following issue was submitted at the request of the defendants:

That plaintiff was financially able to pay for one-half interest in said lease and to carry out the contract the defendant Ham-

mon made with the McCartys on or about June 29, 1928.

The evidence was conflicting upon the issue of whether or not the plaintiff and the defendant Hammon made such a contract. The plaintiff introduced as witnesses J. B. Combs and C. A. Rogers, both officers and agents of the plaintiff company, with power to purchase leases, who testified that such an agreement was made. Miss Bonnie Marie Morris, connected with the United Royalties Corporation and secretary-treasurer thereof, testified that she was in the office of J. B. Combs and heard conversations between Hammon and Combs and Rogers, and that Hammon talked to her about the agreement to purchase the leasehold interest in the 20-acre McCarty lease for the plaintiff and said defendant. Mr. M. Logan, an oil broker, testified that he went to see Combs and Rogers about negotiating for the lease, and that they told him that they were having the matter looked after by some one else. Mr. Hammon testified that he had no such agreement, and that he discussed the matter with Combs, but that, when the latter had found out that S. H. McCarty, Jr., wanted $1,000 an acre for the leasehold interest, Combs told him that the plaintiff was not interested. That he finally purchased the leasehold interest for $15,000, of $750 an acre, and that Combs later came to him and wanted to buy an interest in the leasehold, but he refused to sell. He was corroborated by several witnesses.

But the jury are the judges of the credibility of the witnesses and the facts proved, and we cannot say that there is not sufficient evidence to sustain the findings of the jury upon the issues submitted and the judgment rendered thereon by the court, vesting in the plaintiff a one-half undivided interest in and to the oil and gas leasehold estate and fixing thereon one-half of the cost thereof, and one-half of the reasonable expenses incident to the drilling of the well. Upon the judgment rendered the defendants have appealed.

### Opinion.

In some of the jurisdictions, including Texas, if one purchases property, or a leasehold interest, with funds paid by, or pledged by, either in whole or in part, another party, and takes title to the property in his own name, said property has a resulting trust thereon in favor of the party furnishing the consideration, or promising to furnish the consideration, where he is shown to be solvent and able to carry out the contract, to the extent of the aliquot part of which he purchases. See Bogert on Trusts, p. 105 et seq. This rule of equity has been followed by a number of Texas cases. See Allen v. Allen, 101 Tex. 362, 107 S. W. 528; James v. Fulcrod, 5 Tex. 512, 55 Am. Dec.

743; Scranton v. Campbell, 45 Tex. Civ. App. 388, 101 S. W. 285, by the Galveston Court of Civil Appeals, opinion by Chief Justice Gill.

Appellant relies particularly on the case of Rische v. Diesselhorst, 26 S. W. 762, by the San Antonio Court of Civil Appeals, opinion by then Justice Fly. The court said:

"The first proposition under the second assignment of error is, we think, incorrect, and not supported by the authorities cited, so far as we have had access to them. It is that a trust estate cannot be ingrafted by parol upon a legal leasehold title, unless accident, fraud, or mistake in the making of the contract out of which the trust results be alleged and proved. The true rule is that 'every kind of valuable property, both real and personal, that can be assigned at law, may be the subject-matter of a trust. Every kind of vested right which the law recognizes as valuable may be transferred in trust.' 1 Perry, Trusts. The law presumes a trust from the fact that a person standing in a fiduciary relation to another uses the trust funds for the purchase of property, and it does not matter whether the conveyance is taken in the name of one or the other; it will be presumed to be the property of the cestui que trust. In this case no fiduciary funds were placed in the hands of appellant by appellee, and there is nothing in the allegations or proof to show that any money was paid until after the execution of the lease. 'A trust results from the acts, and not from the agreements, of the parties; or rather from the acts accompanied by the agreements. But no trust can be set up by mere parol agreements, or, as has been said, no trust results merely from the breach of a parol contract; as, if one agrees to purchase land and give another an interest in it, and he purchases and pays his own money, and takes the title in his own name, no trust can result. And so, if a party make no payment, and none is made on his account, either actually or constructively, he cannot claim a resulting trust.' Id. § 134. The rule is different, however, if the party setting up the trust was led to take action that otherwise he would not have taken, for the breach of promise then becomes a fraud, and a trust may exist. At the time the lease was executed by Brady to Rische, Diesselhorst was occupying the Opera House bar, and he does not allege in any manner to have changed his position, or to have taken any action that he would not have taken if a trust had not been created. No money was paid in advance by Diesselhorst, and the testimony shows that when the lease was executed the lessor knew nothing of any connection that appellee had with the lease. The contract was made on the credit of Rische, and, even if he agreed with appellee beforehand that he would give him an

interest in the lease, but leased the property on his own credit, and took the lease in his own name, no trust can result. Id. This rule, as before stated, is modified, however, by the allegation and proof that appellee was by the agreement induced to take some action that he would not have done otherwise, or was placed at a disadvantage by the fraudulent acts of appellant. The testimony shows that the agreement between appellant and appellee, as narrated by the latter, was that the lease was to be taken in the name of Rische for the use and benefit of both, and that by reason of this agreement appellee was induced to desist from bidding for the rent of the house. If this is true, and had been alleged, it shows a fraud upon the part of appellant, and he would be resonsible for the damages arising from his unauthorized acts in suing out and levying the writ of sequestration on the house. But there is no allegation in the answer under which the testimony was admissible. The other matters assigned are not likely to arise on another trial, and need not be considered. For the reason that the judgment is not supported by the allegations, it is reversed, and the cause remanded.

## "On Rehearing.

"It may be that to create a resulting trust it is not necessary that the money paid by the beneficiary be handed over at the time. It is sufficient if the purchase is made on his credit. But the evidence in this case, instead of showing that the lease was made on the credit of Diesselhorst, shows that it was made upon that of Rische alone. Rische and Brady both swear positively that when the lease was made appellee was not mentioned, and was not considered. How, then, could the lease have been secured on his credit? If there was the least particle of testimony showing that the lease was made on appellee's credit, there might be something in his contention; but there is nothing to support it. But it is contended that the credit of Diesselhorst was extended to Rische, and that was sufficient. We think not. If appellee's credit was given to appellant, he did not use it. Under proper allegations, appellee may sustain his case."

It is evident from the opinion that the court found that Diesselhorst paid no money on the lease purchased by Rische, and that the purchase was made on the credit of Rische, and that there was no allegation or proof that Diesselhorst was by the agreement induced to take some action that he would not have done otherwise or was placed at a disadvantage by the fraudulent acts of appellant. Therefore, the court said that under the testimony of appellee there was an agreement that the lease was to be taken in the name of Rische for the use and benefit of both, but, by reason of such agreement, appellee was induced to desist from bidding for the lease of the house. . The court said that, if this were true, and it had been alleged, it would show a fraud upon the part of appellant, and he would be responsible for the damages arising from his unlawful acts in suing out and levying a writ of sequestration on the house. But there was no allegation in the answer under which such testimony was admissible. In the present case there was an allegation that the plaintiff had refused to purchase the lease, or to authorize negotiations for the purchase of the lease through Logan, relying on the agreement with Hammon, and there was testimony to support that contention. We think that the Diesselhorst Case is easily distinguishable from the present suit. See Perry on Trusts, vol. 1, § 124, p. 140 et seq.; Lewin on Trusts, by James H. Flint (1889 Ed.) vol. 1, § 143, p. 194 et seq.; Pomeroy's Equity Jurisprudence, vol. 3, § 1030, p. 2333; 26 R. C. L. c. IV, for a fuller discussion of the extent and limitations of a resulting trust upon property purchased by one person in his name, or in the name of some other person, for the benefit of his cestui que trust. The Diesselhorst Case has been cited in the Texas decision of Friedsam v. Rose (Tex. Civ. App.) 271 S. W. 417.'

While the writer might have rendered a different finding upon the testimony of plaintiff's witnesses and defendant's witnesses, yet the jury and the trial court are better qualified to pass upon the credibility of the witnesses than one who was not present at the trial below.

Appellant urges that the court should have submitted the issue: "If you have answered Special Issue No. 1 'Yes,' then find whether or not the plaintiff relied on said agreement and refused to try to purchase said lease from the McCartys."

The evidence seems to be one way on this issue. Logan, apparently a disinterested witness, testified that he went to the agents of the plaintiff and offered to negotiate for the purchase of the lease, but said agents, Combs and Rogers, told him that they had already arranged for a man to purchase it. Combs testified to Logan's offer and his refusal thereof. It does not appear that there was any issue in the testimony upon this point.

Complaint is also made of the refusal of the trial court to submit this issue: "If you have answered Special Issue No. 1 'Yes,' then find whether or not the plaintiff changed his position or took some action with reference to the 20 acre lease in controversy, that it would not have taken except for the agreement made with it by the defendant Hammon, with reference to the purchase of said twenty acre lease?"

We think the evidence is uncontradicted that the plaintiff did refuse to negotiate with

Logan for the purchase of the lease, relying on the agreement made between Combs and Hammon.

We do not think that the issue: "Did the plaintiff's agent, J. B. Combs, ask the defendant Hammon to sell his interest or a part thereof in the 20 acre lease in question?" should have been given, inasmuch as said issue does not call for an answer on any specific issue involved, but is only evidentiary of the issue as to whether or not plaintiff's agent Combs and defendant Hammon did agree to the purchase on joint account of the leasehold in controversy.

All assignments are overruled, and the judgment is affirmed.